## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| International Controls and Measurements Corp. and ICM Controls Corp., | ) ) ) |
| Plaintiffs, | ) **Case No.:** 5:12-CV-1766 (LEK/ATB) |
| v. | ) ) |
| Honeywell International, Inc. and Resideo Technologies, Inc., | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO THE MAGISTRATE JUDGE'S ORDER GRANTING LEAVE FOR DEFENDANTS TO FILE A SUPPLEMENTAL ANSWER ASSERTING THE AFFIRMATIVE DEFENSE OF PATENT UNEFORCEABILITY**

**Hancock Estabrook, LLP**
John G. Powers, Esq.
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202

**Merchant & Gould P.C.**
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402

*Counsel for Plaintiffs International Controls and Measurements Corp. and ICM Controls Corp.*

## Table of Contents

**Page**

I.  RELEVANT FACTUAL BACKGROUND....................................................................4

    A.  From the time of its first contentions, ICM has maintained that "actuating" requires more than the mere transfer of energy. ...................................................5

    B.  ICM argued to the Patent Office during the '719 IPR that "actuating" requires more than the mere transfer of energy ......................................................6

    C.  When the parties returned to this Court, ICM maintained its position that "actuating" requires more than the mere transfer of energy ................................6

    D.  ICM maintained its position that "actuating" requires more than the mere transfer of energy in the '645 reexam ..................................................................8

    E.  After the '645 reexam concluded, Honeywell proposed a construction of "for actuating" addressed to separate actuation, not to whether "actuating" means mere transfer of energy ..........................................................................10

    F.  The Magistrate Judge allowed Honeywell's unenforceability defense without identifying any material misrepresentation or omission.........................11

II.  ARGUMENT ........................................................................................................13

    A.  Applicable standards require *de novo* review of the Magistrate Judge's decision and require Honeywell to meet the high pleading standard of Rule 9 ...............................................................................................................13

        1.  A magistrate judge's determinations of law, such as on the issue of futility, are reviewed by the district court *de novo* ..................................13

        2.  The Court need not draw unreasonable inferences in Honeywell's favor or accept Honeywell's mischaracterizations of documents that are contradicted by the documents themselves .........................................13

        3.  Claims or defenses of patent unenforceability based on inequitable conduct must meet stringent pleading requirements...............................14

        4.  A defense of patent misuse based on patent enforcement efforts requires factual allegations of bad faith and improper purpose...............16

    B.  The Magistrate Judge erred in concluding that Honeywell's supplemental patent unenforceability defense is not futile ......................................................17

1.   Honeywell has not pled a plausible defense of patent unenforceability based on inequitable conduct ....................................... 17

     a.   The Magistrate Judge's ruling identifies no material misrepresentation or omission capable of supporting an inequitable conduct defense ......................................................... 17

     b.   The Magistrate Judge erred in concluding Honeywell adequately pled specific intent to deceive the Patent Office ....... 21

2.   Honeywell has not pled a plausible defense of unenforceability based on patent misuse ............................................................ 23

III.   CONCLUSION ............................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................13, 14

*Chamberlain Grp. v. Techtronic Indus.*,
    2017 U.S. Dist. LEXIS 41095 (N.D. Ill. Mar. 22, 2017)................................. *passim*

*DiFolco v. MSNBC Cable*,
    622 F.3d 104 (2d Cir. 2010)...........................................................................14

*Empire Merchs. v. Reliable Churchill*,
    902 F.3d 132 (2d Cir. 2018)...........................................................................13

*ESCO Corp. v. Cashman Equip.*,
    158 F. Supp. 3d 1051 (D. Nev. 2016) ...........................................................16, 21

*Exergen v. Wal-Mart Stores*,
    575 F.3d 1312 (Fed. Cir. 2009)................................................................. *passim*

*F5 Capital v. Pappas*,
    856 F.3d 61 (2d Cir. 2017)............................................................................13

*Finjan, Inc. v. ESET, LLC*,
    2017 U.S. Dist. LEXIS 116359 (S.D. Cal. July 24, 2017) ...................................16

*GE v. Mitsubishi Heavy Indus.*,
    946 F. Supp. 2d 582 (N.D. Tex. 2013) ............................................................10

*GEOMC v. Calmare Therapeutics*,
    918 F.3d 92 (2d Cir. 2019)............................................................................13

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
    45 F.3d 1550 (Fed. Cir. 1995)......................................................................17, 23

*Green v. Harbach*,
    750 Fed. Appx. 57 (2d Cir. 2019)...................................................................13

*Junker v. Medical Components*,
    2015 U.S. Dist. LEXIS 15707 (E.D. Pa. Feb. 9, 2015) .......................................12

*Liana Carrier v. Pure Biofuels*,
    672 Fed. Appx. 85 (2d Cir. 2016)........................................................................13

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
    603 F.3d 943 (Fed. Cir. 2010)...........................................................................23

*ParkerVision v. Qualcomm*,
    924 F. Supp. 2d 1314 (M.D. Fla. 2013).......................................................16, 21

*Pinnacle Agric. Distrib. v. Watts*,
    2019 U.S. Dist. LEXIS 69099 (S.D.N.Y. Apr. 23, 2019).....................................14

*Poindexter v. EMI Record*,
    2012 U.S. Dist. LEXIS 42174 (S.D.N.Y. Mar. 27, 2012)....................................14

*Princo Corp. v. ITC*,
    616 F.3d 1318 (Fed. Cir. 2010)..........................................................................16

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993).............................................................................................16

*Reade-Alvarez v. Eltman, Eltman & Cooper*,
    369 F. Supp. 2d. 353 (E.D.N.Y. 2005) ..............................................................14

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)...........................................................................23

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)......................................................................1, 14

*TK Holdings v. CTS Corp.*,
    2010 U.S. Dist. LEXIS 51667 (E.D. Mich. May 26, 2010)..................................10

*Ungar v. City of New York*,
    329 F.R.D. 8 (E.D.N.Y 2018) ............................................................................13

*Unverferth Mfg. v. Par-Kan*,
    2014 U.S. Dist. LEXIS 72398 (N.D. Ind. May 27, 2014) ..............................15, 21

*Vaughan Co. v. Global Bio-Fuels Tech., LLC*,
    2013 U.S. Dist. LEXIS 152068 (N.D.N.Y. Oct. 23, 2013) ..........................1, 16, 21

*Wakefern Food v. Prospect Plaza Improvements*,
    2010 U.S. Dist. LEXIS 116518 (D. Conn. Nov. 2, 2010) ....................................13

**Statutes**

28 U.S.C. § 636(b)(1)(A)...........................................................................................13

35 U.S.C. § 271(d)(3) .................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 9 ................................................................................................13, 15

Fed. R. Civ. P. 36 ......................................................................................................12

Fed. R. Civ. P. 72(a) .............................................................................................4, 13

The Magistrate Judge erred in allowing Honeywell[1] to insert into this seven-year old case a new proposed defense of patent unenforceability—a defense so disfavored by the Federal Circuit that it has called it the "atomic bomb of patent law" because of the burden it imposes on the courts and the Patent Office. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (*en banc*). While patent unenforceability defenses used to be routine, and raised in almost all patent infringement cases, the Federal Circuit in recent years has made significant efforts to encourage the district courts to allow such defenses only where the allegations suggest the type of egregious fraud and misconduct that the defense was created to address. *Id.* at 1287; *Vaughan Co. v. Global Bio-Fuels Tech., LLC*, No. 1:12-CV-1292, 2013 U.S. Dist. LEXIS 152068, at *15 (N.D.N.Y. Oct. 23, 2013). Here, ICM[2] does not dispute many of the underlying determinations made by the Magistrate Judge. Indeed, the Magistrate Judge determined many of Honeywell's assertions were either misleading or inaccurate. Rather, ICM submits the Magistrate Judge erred in applying an erroneously low bar to the evaluation of futility—allowing Honeywell to assert the disfavored defense without identifying any material misrepresentation or omission capable of supporting it.

The defense relies principally on Honeywell's assertion that ICM presented different constructions of the claim term "actuating" to this Court in articulating its infringement theories than it presented to the Patent Office in defending its asserted patents against Honeywell's invalidity challenges. But Honeywell's arguments are belied by the documentary record on which it relies. A party cannot overcome a futility challenge by asking a Court to rely on its misrepresentations or mischaracterizations of statements that the Court has available to it in the

---

[1] Defendants Honeywell International Inc. and Resideo Technologies, Inc. are collectively referred to throughout this memorandum as "Honeywell" or "Defendants."
[2] Plaintiffs are collectively referred to throughout this memorandum as "ICM" or "Plaintiffs."

record. A defense that relies on an unreasonable reading of the record does not meet the plausibility standard, and should be rejected on futility grounds.

To the extent there is any litigation misconduct to be found in this dispute, it is in how Honeywell has misled the Court about the significance of the "actuating" term and its meaning. Indeed, after reviewing all of the records from Patent Office in connection with the *inter partes* review of ICM's U.S. Patent No. 6,222,719 ("the '719 IPR") and the ex parte reexamination of ICM U.S. Patent No. 5,889,645 ("the '645 reexam"), Honeywell asserted:

> [I]n the meantime, a threshold issue for our consideration of the schedule is the present claim construction in this case compared to the constructions that ICM used to argue for validity in the reexamination proceedings before the PTO.
>
> To that end, please confirm as soon as possible that you agree the following two constructions . . . .
>
> As used with the first relay actuator coil element in claims 1 and 7, "for actuating" should be construed as a supplement to the Court's Order. It means: "the first relay coil must be **configured to actuate** a first actuator device separate from a second actuator device (or powered device for claim 12)."

(Dkt. No. 252-22 (emphasis added).) In other words, Honeywell, aware of all of the statements ICM made concerning the meaning of "actuating" in this Court and to the Patent Office, did not seek to define that word at all. Rather, Honeywell focused on whether the actuation of the first actuator device had to be "separate from a second actuator device."

Approximately one year later, Honeywell inexplicably changed its position. In asking for leave to supplement to add its new defense, Honeywell asserted ICM committed inequitable conduct and patent misuse because "ICM has taken materially different positions regarding the meaning of the term 'actuate,' particularly as to whether it means more than the mere 'transfer of energy' within a circuit." (Dkt. No. 252-1 at 5.)[3] Specifically, Honeywell asserted that ICM told

---

[3] Where the page numbering differs as between the bottom of the page and that found in the Court's docket header, the citations herein reference the latter unless otherwise stated.

the Patent Office that "actuate" means more than merely receiving or transferring energy (*id.* at 12 ("ICM Relied on a Construction of 'Actuating' that Excludes Merely Transferring Energy in the '645 Patent Reexamination Proceedings.")), but told the Court the opposite (*id.* at 11 ("ICM Asserts in this Litigation that Transferring Energy Constitutes 'Actuating.'")).

A careful review of the record, including the very documents Honeywell relies upon for its new defense, demonstrates otherwise. ICM has, throughout this litigation, the '645 reexam, and the '719 IPR asserted that the term "actuating" requires (1) the transfer of energy (2) to power an actuator device. Though ICM has sometimes used synonyms in addressing the meaning of the word "actuate" (*e.g.*, to power, activate, turn on, render active), ICM has never, as Honeywell suggests, maintained that the mere transfer of energy alone can constitute actuation. Honeywell's contrived arguments conflate statements relating to how energy is delivered to different circuit components with statements relating to what that energy is used for when it arrives at its intended destination. In so doing, Honeywell creates confusion and the appearance of inconsistency where none exists. Reading ICM's statements regarding the meaning of "actuate," without Honeywell's gloss, reveals no inconsistency: mere transfer of energy is not actuation (energy flows through components of a circuit that are passive devices not capable of being turned on or off), but the transfer of energy to power (in other words, to activate or turn on) an actuator device is actuation.

As noted above, the Magistrate Judge largely credited ICM's representations of the record and found that Honeywell "relie[d] liberally on selective quotations, the omission of important context, dubious construction of language, and disingenuous indignance." (Dkt. No. 276 at 15:1-3.) Despite this, and without identifying in Honeywell's proposed supplemental answer any material misrepresentation sufficient to support Honeywell's unenforceability

defense, the Magistrate Judge nevertheless concluded that the new defense is not futile and granted Honeywell's motion. This is legal error. Inequitable conduct is not about whether a party makes arguments the other side disputes. It is about whether a party intentionally and with specific intent to deceive, withheld or lied about information to the Patent Office that, if the Patent Office had known about it, would have prevented the patent from issuing.

Accordingly, pursuant to Rule 72(a), ICM objects to the Magistrate Judge's ruling granting Defendants' motion for leave to supplement their answer to add an unenforceability defense. (Dkt. No. 275.) These Objections are timely filed. (*Id*.) For the reasons set forth herein, the Court should sustain ICM's objections to the Magistrate Judge's ruling, deny Defendants' Motion to Supplement as futile, and rule that Defendants' First Amended Answer (Dkt. No. 51), without supplementation, is the operative answer in this case.

## I.    RELEVANT FACTUAL BACKGROUND

Neither Honeywell nor the Magistrate Judge identify a single instance of ICM actually defining "actuating" to mean merely a transfer of energy because that never happened. Every time ICM has discussed actuation it has explained that actuation requires not just the transfer of energy, but the use of that energy ***to power*** an actuator device. The mere transfer of energy to a capacitor is not actuation—capacitors are passive devices that store energy. But the transfer of energy from a coil through a capacitor, wherein that energy is then used to power (*i.e.*, turn on, activate, render active) an actuator device, is actuation. Fulsome review of ICM's statements, as opposed to Honeywell's contorted representations thereof, confirms ICM's consistency. To the extent ICM's expression of this concept used different words, it was because of different context and because of the shifting arguments being made by Honeywell.

**A.     From the time of its first contentions, ICM has maintained that "actuating" requires more than the mere transfer of energy.**

ICM filed its Complaint on November 30, 2012, alleging Honeywell infringed two ICM patents: U.S. Patent Nos. 5,889,645 ("the '645 patent") and 6,222,719 ("the '719 patent"). (Dkt. No. 1.) Both asserted patents included claim limitations based on the root word "actuate." For instance, claim 1 of the '645 patent requires, in part:

> Arrangement for actuating two or more actuator devices from a single microprocessor output, comprising . . .
> a first relay actuator coil ***for actuating one of said devices***, and having a first end connected to a voltage supply and a second end connected to the second current carrying electrode of said switch device . . . [and]
> a second relay actuator coil ***for actuating a second one of said devices***, and having a first end connected to the first terminal of said capacitor and a second end . . . .

(Dkt. No. 252-6 at claim 1 (emphasis added).)

On October 17, 2013, ICM served its Initial Patent Disclosures. (Dkt. No. 256-4.) There, ICM explained that Honeywell's accused products met the '645 patent limitation of "a first relay actuator coil ***for actuating*** one of said devices" because, in the accused product:

> Coil (L) is a relay actuator coil, which is used to actuate at least the spark igniter (via coupling capacitor C5) and the flame sensing circuit (via coupling capacitor C7).

 (*Id.* at 14-15). In the accused products, coils were not asserted to be "for actuating" an actuator device merely because they transferred energy through a capacitor, but because that energy was used to activate an actuator device (*i.e.*, the spark igniter or the flame sensing circuit).

In its Preliminary Claim Constructions, ICM confirmed its understanding that "actuate" means "to activate" and that "actuating" means "activating." (Dkt. No. 256-5.) The evidence cited by ICM further confirmed this requirement of activation. (*Id.*) Honeywell, on the other hand, asserted that "for actuating" meant "controlling and energizing." (Dkt. No. 58 at 21-22.)

Before the Court could rule on claim construction, the Patent Office instituted the '719 IPR, and

the parties stipulated to stay this litigation. (Dkt. No. 80.)

**B.      ICM argued to the Patent Office during the '719 IPR that "actuating" requires more than the mere transfer of energy.**

As explained by Honeywell, in Appendix A to its motion for leave to supplement, during

the '719 IPR, ICM argued that "actuating" means more than mere transfer of energy, explaining:

- From ICM's expert's deposition:

    o  "actuating a furnace to me means turning on something on inside the furnace"
    o  actuating is "actually activating some component in the furnace"

- From the oral hearing at the Patent Trial and Appeal Board (PTAB):

    o  "The construction of actuates is render active."
    o   "It is turning something on. Rendering active."
    o  "If actuate means that something receives energy, well, that's not any reasonable meaning of actuate."

- From the reply brief to the Federal Circuit:

    o  "Charging a capacitor is the delivery of energy and nothing more; charging a capacitor is not actuation."

(Dkt. No. 252-2 at 2.) None of the arguments made to the Patent Office in the '719 IPR were

inconsistent with the construction of "actuate" ICM had proposed to the Court, as the Magistrate

Judge concluded. (Dkt. No. 276 at 21:11-14 (noting the Magistrate Judge does not "find ***any***

material inconsistencies between ICM's construction of 'actuate' during the early stages of the

litigation and during the '719 patent IPR.") (emphasis added).)

**C.      When the parties returned to this Court, ICM maintained its position that "actuating" requires more than the mere transfer of energy.**

After the stay was lifted and the case returned to this Court, the parties brought motions

for summary judgment. Honeywell has asserted that ICM changed positions in its summary

judgment brief and argued that actuating required only the delivery of energy, citing ICM's

statement that "for actuating" means " providing energy to power an actuator device; that is,

transferring energy – being all that relay coils can do." (Dkt. No. 252-1 at 11.) As the Magistrate

Judge recognized in his ruling, Honeywell's argument took this quote out of important context.

(Dkt. No. 276 at 35:8-13.) Namely, the discussion about relay coils operating by transferring

energy was addressed to Honeywell's proposed claim construction asserting that "actuating"

means "controlling." (Dkt. No. 128-1 at 28.) ICM explained that relay coils cannot control other

devices, but can and do transfer energy to turn them on. (*Id.* at 28-29.)

To the extent there were any remaining doubt that ICM maintained that "actuating"

required more than the mere transfer of energy, just a few lines above the text Honeywell quoted

ICM made explicit its position:

- "'To actuate' means 'To put into action.'"

- "In the context of the '645 patent 'for actuating' means providing energy to power
  another device."

(Dkt. No. 128-1 at 28.) Moreover, in reply to Honeywell's summary judgment response brief,

which mischaracterized ICM's summary judgment arguments way back in 2017, ICM explained:

> Honeywell now agrees that "for actuating" means "rendering active." . . .
> Honeywell misstates ICM's construction as "providing energy to." . . . The proper
> construction of "for actuating" is "providing energy to power." . . . The Accused
> Circuits infringe **because they provide energy sufficient to power, or render
> active, two actuator devices** (claims 1 and 7), or an actuator device and a powered
> device (claim 12).

(Dkt. No. 143 at 9-10 (emphasis added).) In ruling on ICM's motion for summary judgment, the

Court did not provide an express construction of the term "actuating," presumably because any

disagreement over its meaning had seemingly been resolved. (Dkt. No. 146.)

Thereafter, ICM moved for and ultimately was granted leave to amend its infringement

contentions to address the Court's construction of the terms "relay actuator coil" and

"connected" under the doctrine of equivalents. (Dkt. No. 183 at 30-31.) These Second Amended Initial Patent Disclosures were provided to Honeywell prior to ICM filing its motion for leave to file them with the Court on July 14, 2017. (Dkt. No. 149.) In the Second Amended Disclosures, ICM maintained its position that actuation requires more than the mere transfer of energy, but rather the transfer of energy to power an actuator device. (*E.g.*, Dkt. No. 252-17 at 4 & 8 (explaining the accused circuits meet the "for actuating" limitations because *inter alia* "[t]he functions of the first coil (L31) are to provide energy to power a first actuator device (the flame sense rod) . . ." and that "[t]he function of the second coil (primary winding of T31) is to provide energy to power a second actuator device (the igniter)."). Contrary to Honeywell's repeated assertions otherwise, ICM has never taken the position that the mere transfer of energy to a capacitor is actuation. But ICM has always taken the position that the transfer of energy through a capacitor to turn on, to power, or to render active an actuator device is actuation.

### D. ICM maintained its position that "actuating" requires more than the mere transfer of energy in the '645 reexam.

On October 6, 2017, after Honeywell's summary judgment motion was denied, Honeywell filed a request for reexamination of the '645 patent asking the Patent Office to find all asserted claims of that patent obvious in view of various prior art references, including U.S. Patent 4,167,767 to Courier de Méré ("Courier"). (Dkt. No. 170-1.) Honeywell provided the Patent Office with various materials, including ICM's proposed Second Amended Initial Patent Disclosures and ICM's briefing in support of the same. (*Id.* at 91.)

During the '645 reexam, ICM argued that, unlike in ICM's invention, the alleged "first relay actuator coil" in Courier "does not actuate any actuator device separately from the actuator device activated by the primary winding 43. Both are part of the actuation of the igniter connected to secondary winding 45." (Doc. No. 252-20 at 5.) In other words, while the alleged

"second relay actuator coil" of Courier actuates a second actuator device (the spark igniter), the alleged "first relay actuator coil" or Courier actuates only that same device while the claims require that it actuate a different actuator device. (*E.g.*, Dkt. No. 252-28 at 14.)

Intentionally misrepresenting ICM's position,[4] Honeywell argues it cannot be true that Courier's first coil "does not actuate any actuator device separately from the actuator device actuated by primary winding 43" because ICM previously "admitted" in the '719 IPR that Courier "includes two components that are capable of being actuated and ICM's expert Eisenstadt had also admitted in the '719 patent IPR proceedings that Courier's coil 34 provides energy that powers a capacitor in the flame detection system, which is a separate component from the igniter." (Doc. No. 252-1 at 13.) ICM has always maintained that the transfer of energy to a capacitor is not actuation unless the energy from the capacitor is employed to activate some component. A capacitor itself is a passive device. It cannot be activated or turned on. ICM has consistently maintained that, in Courier, a DC power source, not the energy from the capacitor, actuates the comparator. (Dkt. No. 252-9 at 29; Dkt No. 252-10 ¶ 25; Dkt. No. 256-6 at 102:11-15.) Honeywell's misleading suggestion to the contrary is unsupported.

Honeywell states that "[i]f actuate includes transferring energy to power a device, Courier actuates two components and the statements to the Patent Office during the '645 reexamination are false." (Dkt. No. 252-1 at 15 (emphasis added).) Through its vague assertion that Courier actuates two components, Honeywell continues its deception. The issue in the '645 reexam was not whether Courier actuates two components, but rather whether the ***relevant coils*** actuate two components. Courier only has one component actuated by a coil. The only other

_____

[4] As The Magistrate Judge noted in ruling on Honeywell's Motion to Supplement, "Honeywell has clearly taken liberties with the record . . . ." (Dkt. No. 276 at 42:19-20.)

component of the Courier circuit that is capable of actuation, a comparator, is actuated by a DC power source, as ICM has consistently and repeatedly explained to the Patent Office.

To the extent there is a dispute between the parties on this point, it is an issue for the invalidity stage of this case, not evidence that ICM committed fraud. That parties dispute the structure or operation of a prior art reference during patent litigation is something that occurs in virtually all patent cases—that does not mean inequitable conduct or patent misuse can be pled in all patent cases. *GE v. Mitsubishi Heavy Indus.*, 946 F. Supp. 2d 582, 589 (N.D. Tex. 2013) ("A limited inequitable conduct doctrine should prevent the intentional deception of the Patent Office, not merely punish harmless oversights or legitimate disagreements over the relevance of prior art."). The Magistrate Judge did not find that ICM hid any material prior art from the Patent Office, nor does Honeywell assert it did. Indeed, ICM's infringement positions, which Honeywell asserts are inconsistent with its invalidity position, were provided to the Patent Office in the reexamination request. The patent examiners who reviewed ICM's arguments during the '645 reexam were not just any people, but three people of skill in the relevant art. *TK Holdings v. CTS Corp.*, No. 08-14266, 2010 U.S. Dist. LEXIS 51667, at *29 (E.D. Mich. May 26, 2010) ("[I]t is clear that the examiner, one having ordinary skill in the relevant art at the time of the invention . . . ."). The examiners had Courier, and all of Honeywell's arguments from the reexamination request about why Courier invalidated the '645 patent claims, in front of them. Nothing was withheld. And the examiners agreed with ICM's discussion of Courier's structure and operation—namely, that both coils are for actuating the same actuator device (the igniter).

**E. After the '645 reexam concluded, Honeywell proposed a construction of "for actuating" addressed to separate actuation, not to whether "actuating" means mere transfer of energy.**

After the '645 reexam concluded, Honeywell wrote to ICM to propose a construction of "for actuating." (Dkt. No. 252-22 at 2.) Honeywell did not suggest in its proposal that the issue

of whether "for actuating" requires the mere transfer of energy or something more had any significant bearing on this case or the status of the '645 patent. (*Id. passim.*) Instead, Honeywell proposed that the parties agree to construe "for actuating" to mean "the first relay coil must be configured to actuate a first actuator device separate from a second actuator device (or powered device for claim 12)." (*Id.* at 2.) Rather than suggest that ICM had presented inconsistent positions regarding the meaning of "for actuating," Honeywell proposed a construction that included the very term "actuate." (*Id.*) It was not until nearly a year later, that Honeywell filed its motion for leave to supplement its answer, in which it argues otherwise.

### F.    The Magistrate Judge allowed Honeywell's unenforceability defense without identifying any material misrepresentation or omission.

The Magistrate Judge ruled on Honeywell's motion to supplement during a telephonic hearing on July 29, 2019. (Dkt. No. 276 at 1-47.) The Magistrate Judge concluded Honeywell's proposed patent unenforceability defense was not futile (*Id.* at 36:7-9), but did not identify any material misrepresentation or omission capable of supporting Honeywell's defense. The futility conclusion cannot be reconciled with the fact findings.

The Magistrate Judge highlighted three instances in which Honeywell alleges that ICM took positions in this litigation that contradicted its position during the '645 reexam: (1) in ICM's October 17, 2013 Initial Patent Disclosures; (2) in ICM's brief in support of its motion for summary judgment; and (3) in ICM's Second Amended Initial Patent Disclosures. (*Id.* at 15:21-16:21, 21:15-23:5, 26:7-15, 30:8-13; 34:25-35:13.) In each instance, the Magistrate Judge further noted that ICM's litigation positions were actually consistent with the positions it advanced during the '645 reexam that actuation requires the powering on of an actuator device:

- Regarding ICM's Initial Patent Disclosures, "the infringement contentions speak of actuating, not a capacitor, but other devices through a capacitor . . . ." (*Id.* at 16:18-20.)

11

- Regarding the brief in support of ICM's motion for summary judgment, "[t]he selective quotation in Honeywell's affirmative defense ignores the context of the statement and the immediately preceding statements in ICM's summary judgment brief that, 'to actuate' means 'to put into action,' and that 'for actuating' means 'providing energy to power another device.'" (*Id.* at 35:8-13.)

- ICM's Second Amended Initial Patent Disclosures, "seem[] to construe the term 'actuate' with the phrase 'provide energy to power' an actuator device. In other contexts, ICM's second amended contentions also use the phrase, and I'm quoting, 'provide energy to be accumulated on a capacitor,' perhaps recognizing the distinction between that process alone and the process of powering an actuator device through the use of a capacitor." (*Id.* at 26:9-15.)

Despite these findings, relying on what he labeled "a few arguably inconsistent statements by ICM agents," the Magistrate Judge found he could not "rule out that Honeywell could establish . . . that ICM failed to disclose material prior statements to the [Patent Office] with specific intent to deceive the agency[,]" and concluded that Honeywell's defense was not futile.[5] (*Id.* at 35:22-36:9.) What these "arguably inconsistent statements" are is unclear. And, in any event, a few "arguably inconsistent statements" are, as a matter of law, insufficient to support a defense of patent unenforceability, even at the pleading stage. Because the Magistrate Judge erred in concluding that Honeywell's proposed unenforceability defense was not futile, ICM objects to the order granting Honeywell leave to assert its unenforceability defense. ICM respectfully requests that the Court sustain ICM's objection.

---

[5] The Magistrate Judge seems to assign importance to ICM's objections to Requests for Admission that requested that ICM admit to a particular definition of "actuate." (Dkt. No. 276 at 27:13-28:23.) To the extent the Magistrate Judge's relies on these objections, such reliance is improper. Requests to admit pure matters of law, such as claim construction, are not permitted under Rule 36 of the Federal Rules of Civil Procedure. *Junker v. Medical Components*, No. 13-4606, 2015 U.S. Dist. LEXIS 15707, at *9 (E.D. Pa. Feb. 9, 2015) ("[T]hese requests for admissions go to the heart of the claim construction and the parties' differences on how the court should proceed. Therefore, I will sustain Plaintiffs' objections."). That ICM sought to be consistent with its objections to RFAs asking about claim construction cannot be held against it.

## II.   ARGUMENT

### A.   Applicable standards require *de novo* review of the Magistrate Judge's decision and require Honeywell to meet the high pleading standard of Rule 9.

#### 1.   A magistrate judge's determinations of law, such as on the issue of futility, are reviewed by the district court *de novo*.

Rule 72(a) of the Federal Rules of Civil Procedure governs objections to a Magistrate Judge's order. Fed. R. Civ. P. 72(a). Where objections are made regarding determinations of law, the District Court reviews those determinations *de novo*. *Ungar v. City of New York*, 329 F.R.D. 8, 12 (E.D.N.Y 2018) ("Questions of law, however, are reviewed de novo."); *Wakefern Food v. Prospect Plaza Improvements*, No. 3:10-cv-827, 2010 U.S. Dist. LEXIS 116518, at \*4 n.2 (D. Conn. Nov. 2, 2010); *cf.* 28 U.S.C. § 636(b)(1)(A)).

A determination of whether a proposed amendment or supplementation to a pleading is futile is a legal determination. *Green v. Harbach*, 750 Fed. Appx. 57, 58 (2d Cir. 2019) ("When a district court denies a motion to amend a complaint based on ***an interpretation of law such as futility***, we review de novo." (emphasis added; internal quotation omitted)); *see also Empire Merchs. v. Reliable Churchill*, 902 F.3d 132, 139 (2d Cir. 2018); *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017); *Liana Carrier v. Pure Biofuels*, 672 Fed. Appx. 85, 89 (2d Cir. 2016). This Court should thus review the Magistrate Judge's ruling that Honeywell's supplemental defense is not futile without deference.

#### 2.   The Court need not draw unreasonable inferences in Honeywell's favor or accept Honeywell's mischaracterizations of documents that are contradicted by the documents themselves.

The Second Circuit recently held that the pleading standards articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), apply to affirmative defenses. *GEOMC v. Calmare Therapeutics*, 918 F.3d 92, 98 (2d Cir. 2019). To be allowed, an affirmative defense must "contain sufficient factual matter,

13

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Importantly, while the Court, in considering futility, must draw all reasonable inferences in favor of the moving party, "the Court is not obligated to draw unreasonable inferences" in a moving party's favor. *Reade-Alvarez v. Eltman, Eltman & Cooper*, 369 F. Supp. 2d. 353, 359 (E.D.N.Y. 2005).

The Court also is not limited to considering a moving party's conclusory, unsupported representations of what the documents comprising the record say. Rather, the Court should consider the content of all documents integral to Honeywell's proposed supplementation in their entirety, even where such documents are not exhibits to or expressly incorporated by reference in the answer. *DiFolco v. MSNBC Cable*, 622 F.3d 104, 111 (2d Cir. 2010). Where the contents of those documents contradict the purportedly factual allegations of the pleadings, "the document[s], not the allegations control . . . ." *Poindexter v. EMI Record*, No. 11 Civ. 559, 2012 U.S. Dist. LEXIS 42174, at *6 (S.D.N.Y. Mar. 27, 2012); *see also Pinnacle Agric. Distrib. v. Watts*, No. 18 Civ. 5365, 2019 U.S. Dist. LEXIS 69099, at *4 (S.D.N.Y. Apr. 23, 2019).

### 3.  Claims or defenses of patent unenforceability based on inequitable conduct must meet stringent pleading requirements.

The elements of inequitable conduct are: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen v. Wal-Mart Stores*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009).

Claims and defenses based on inequitable conduct are subject to pleading standards beyond mere facial plausibility. As the Federal Circuit explained in *Therasense*, improper claims and defenses of inequitable conduct have become "an absolute plague" on the patent system,

"cast[ing] a dark cloud over [a] patent's validity and paint[ing] the patentee as a bad actor." 649 F.3d at 1288-89. Such claims and defenses "discourage[] settlement and deflect[] attention from the merits of validity and infringement issues." *Id.* at 1288. For this reason, the Federal Circuit has, for the last decade, sought to limit the frequency of inequitable conduct claims. It has done this by tightening the standards both for pleading and proving claims of inequitable conduct "in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290.

The Federal Circuit's pleading requirements for inequitable conduct claims and defenses are set forth in its opinion in *Exergen*. After confirming that claims and defenses of inequitable conduct must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure, the *Exergen* Court held that "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." 575 F.3d at 1327. Where, as here, a defense of inequitable conduct is based on an allegation of a misrepresentation or omission before the Patent Office, the pleading party must "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329-30; *Chamberlain Grp. v. Techtronic Indus.*, No. 16 C 6097, 2017 U.S. Dist. LEXIS 41095, at *15 (N.D. Ill. Mar. 22, 2017). Conclusory allegations that material withheld from the Patent Office was non-cumulative are insufficient. *Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *15. An accused infringer must allege specific facts explaining why a withheld reference was not cumulative. *Exergen*, 575 F.3d at 1329-30; *Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *15.

Moreover, even at the pleading stage, the Court must determine whether specific intent to deceive is the "single most reasonable inference to be drawn" from the record. *Unverferth Mfg.*

*v. Par-Kan*, No. 3:13-CV-97, 2014 U.S. Dist. LEXIS 72398, at *10, 15-17 (N.D. Ind. May 27, 2014); *see also ESCO Corp. v. Cashman Equip.*, 158 F. Supp. 3d 1051, 1062-63 (D. Nev. 2016); *Vaughan*, 2013 U.S. Dist. LEXIS 152068, at *16; *ParkerVision v. Qualcomm*, 924 F. Supp. 2d 1314, 1318 (M.D. Fla. 2013).

### 4.   A defense of patent misuse based on patent enforcement efforts requires factual allegations of bad faith and improper purpose.

Patent misuse is a patentee's act of impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive effect. *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010); *Finjan, Inc. v. ESET, LLC*, No. 17-cv-00183, 2017 U.S. Dist. LEXIS 116359, at *10 (S.D. Cal. July 24, 2017). The Federal Circuit has emphasized the "narrow scope of the doctrine" of patent misuse and held that even otherwise wrongful anticompetitive conduct does not constitute patent misuse "unless the conduct in question restricts the use of that patent and does so in one of the specific ways that have been held to be outside the otherwise broad scope of the patent grant." *Princo*, 616 F.3d at 1328-29; *Finjan*, 2017 U.S. Dist. LEXIS 116359, at *10-11. Though Congress has not affirmatively defined patent misuse, it has identified a few specific activities that are not patent misuse, including seeking "to enforce [one's] patent rights against infringement or contributory infringement . . . ." 35 U.S.C. § 271(d)(3). Where, as here, a patent misuse defense is based on alleged bad faith and improper purpose in bringing a patent infringement suit, the defendant must plead facts to support a reasonable inference that the patentee (1) acted with bad faith and improper purpose in bringing the suit and (2) impermissibly broadened the scope of the patent grant with anticompetitive effect. *Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *44.

A lawsuit is brought in bad faith only if it is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. *Id.* (citing *Prof'l Real Estate*

*Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)). A purpose is improper

only if its goal is not to win a favorable judgment, but to harass a competitor and deter others

from competition by engaging the litigation process itself, regardless of the outcome.

*Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *44 (citing *Glaverbel Societe Anonyme v.*

*Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995)).

Where patent misuse allegations are premised on the same factual allegations as

concurrently pled inequitable conduct allegations, the patent misuse allegations must fall with

the inequitable conduct allegations. *Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *44-45

("Given the Court's determination that the '275 patent inequitable conduct counterclaim is

insufficiently pleaded, so too is the patent misuse claim to the extent that it relies on inequitable

conduct." (internal quotation omitted)).

> **B.    The Magistrate Judge erred in concluding that Honeywell's supplemental patent unenforceability defense is not futile.**
>
> > **1.    Honeywell has not pled a plausible defense of patent unenforceability based on inequitable conduct.**

For Honeywell's supplemental defense to be non-futile, Honeywell must allege facts that

plausibly establish (1) an omission or misrepresentation during the '645 reexam that was "but

for" material to patentability and (2) that the single most reasonable inference to be drawn from

the facts alleged is that ICM specifically intended to deceive the Patent Office. Both elements of

the claim must be supported; intent cannot be inferred from materiality or vice versa. Honeywell

did not do so, and the Magistrate Judge erred in allowing the defense to be asserted.

> > > **a.    The Magistrate Judge's ruling identifies no material misrepresentation or omission capable of supporting an inequitable conduct defense.**

As explained above, to plead a defense of inequitable conduct a party must explain both

"why" information alleged to have been withheld or misrepresented is material and not

cumulative, and "'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30. Neither Honeywell in its supplemental defense nor the Magistrate Judge in his ruling sufficiently explained "why" any alleged misrepresentation or omission during the '645 reexam was material or "how" the examiner would have used the information in assessing the claims of the '645 patent.

The Magistrate Judge explained in his ruling, "Honeywell's basis for adding an affirmative defense of unenforceability due to inequitable conduct and/or patent misuse is the position that ICM took with respect to the construction of 'actuate' before the [Patent Office] during the '645 [reexam] was inconsistent with the position that ICM took during this litigation."[6] (Dkt. No. 276 at 20:14-19.) Specifically, "[t]he focus of Honeywell's defense is the alleged inconsistency between ICM's position during the '645 [reexam], which was decided on May 8, 2018, and ICM's amended infringement contentions articulating its theory of infringement under the Doctrine of Equivalents, which Judge Kahn approved a few days later in May 2018." (*Id.* at 30:8-13.) But any such inconsistencies[7] cannot form the basis for a plausible

---

[6] Honeywell also alleges that ICM failed to disclose material statements ICM had previously made regarding Courier. (Dkt. No. 252-4 ¶ 100 ("The prior statements of Plaintiffs' counsel and expert that coil or winding 34 in Courier's Fig. 3 provides a charge that charges up or powers up capacitor 17a of the flame sense circuit[ and] that the comparator of the flame sense circuit is a component other than the ignitor that can be actuated . . . are material to the patentability of the '645 patent claims that were challenged in the reexamination proceeding.").) The Magistrate Judge rejected these interpretations of ICM's representations (Dkt. No. 276 at 33:7-34:16), and limited his rationale for finding Honeywell's new defense non-futile to Honeywell's allegations relating to ICM's representations relating to the meaning of "actuate" (*id.* at 35:22-36:6).

[7] To be clear, there were no inconsistent statements. ICM has always asserted, including in its amended infringement contentions, that the accused Honeywell circuits had a first coil for actuating a first actuator device (the flame sense rod) and a second coil for actuating a second actuator device (the igniter). The accused Honeywell circuits are very different from the circuit of Courier in which both coils are used for actuating only a single actuator device (the igniter), and the only other actuator device present in the circuit is actuated by a DC power source, not by either coil.

inequitable conduct defense because ICM's amended infringement contentions were not omitted. The Patent Office had them during the '645 reexam. (*See* Dkt. No. 170-1 at 91.)

ICM had originally provided its Second Amended Initial Patent Disclosures to Honeywell on February 14, 2017. (Dkt. No. 263 at 3.) Honeywell then provided these same disclosures to the Patent Office in support of its petition to initiate the '645 reexam. (*See* Dkt. No. 170-1 at 91.) Thus, there was no failure to inform the Patent Office of these disclosures, or of the positions on infringement that ICM took therein. Because the Patent Office had the disclosures, they cannot be evidence of a material omission. As a matter of law, these disclosures, and any alleged failure to provide them to the Patent Office, cannot provide support for a plausible claim of patent unenforceability. *Exergen*, 575 F.3d at 1329-30; *Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *15.

Also before the Patent Office through inclusion in Honeywell's petition seeking reexam were (1) Courier; (2) a declaration from Honeywell's technical expert, Dr. Thomas A. Gafford; (3) the Court's Order on the parties' cross-motions for summary judgment; (4) ICM's Reply Memorandum in Support of its Motion for Leave to Serve its Second Amended Initial Patent Disclosures; and (5) ICM's Memorandum in Support of its Motion for Reconsideration and to Supplement the Record. (Doc. No. 170-1 at 91.) Despite having all of these materials, and Honeywell's own arguments about the importance of Courier, the Patent Office ultimately concluded that the asserted claims of the '645 patent were valid.

Honeywell identifies two other documents, in which asserts ICM took the position that actuation requires merely the transfer of energy, that were not before the Patent Office during the '645 reexam: ICM's Initial Patent Disclosures and ICM's Memorandum in Support of its Motion for Summary Judgment. The alleged failure of ICM to provide these documents to the Patent

Office during the '645 reexam is inequitable conduct, according to Honeywell, because these documents allegedly include representations from ICM that actuation requires the mere transfer of energy. (*E.g.*, Dkt. No. 252-1 at 19; Dkt. No. 252-2; Dkt. No. 252-4 ¶¶ 98-102.) ICM, as explained extensively above, disputes that it ever made such a representation. But even if Honeywell's characterization of ICM's statements in these documents were plausible, the documents are cumulative of ICM's Second Amended Initial Patent Disclosures, which Honeywell says convey the same point. Information or documents that are cumulative cannot be material. *Exergen*, 575 F.3d at 1329-30; *Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *17.

To the extent these documents contain any non-cumulative, material information, the Magistrate Judge credited ICM's position that they do not include representations that the mere transfer of energy is actuation. In connection with the Initial Patent Disclosures, the Magistrate Judge explained that "ICM's interpretation of this language seems more plausible because the infringement contentions speak of actuating, not a capacitor, but other devices through a capacitor, and because of ICM's focus of equating 'actuating' with 'activating' in its preliminary claim construction." (Dkt. No. 276 at 16:17-21.) And in connection with ICM's summary judgment motion (Dkt. No. 128-1), the Magistrate Judge found that ICM's statements therein do not contradict ICM's position that "actuation" requires more than the mere transfer of energy:

> The selective quotation in Honeywell's proposed affirmative defense ignores the context of the statement, and the immediately preceding statements in ICM's summary judgment brief that, "'to actuate' means 'to put into action,' and that 'for actuating' means [']providing energy to power another device.'"

(Dkt. No. 276 at 35:8-13.)

If Honeywell's new defense is based on ICM's Second Amended Initial Patent Disclosures, those were before the Patent Office and cannot be "but for" material. If Honeywell's new defense is based on instances in which ICM allegedly represented that actuation requires

merely the transfer of energy in its summary judgment brief or Initial Patent Disclosures, those documents were cumulative to the Second Amended Initial Patent Disclosures, in which ICM allegedly took the same position. If Honeywell's new defense is based on ICM's discussion of the Courier disclosure, the Patent Office had three examiners,[8] who are persons of skill in the art, evaluate Courier, as well as numerous pages of argument from Honeywell (Dkt. No. 170-1), to consider in reaching its conclusion on patentability. If Honeywell thinks the examiners got it wrong, Honeywell can argue the point during the validity proceedings in this case. It does not form a proper basis for an inequitable conduct defense.

The Magistrate Judge did not identify a single misrepresentation or omission for which Honeywell has adequately alleged facts that "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used the information in assessing the patentability of the claims" of the '645 patent. *See Exergen*, 575 F.3d at 1329-30. Absent such allegations, Honeywell fails to state a plausible defense of inequitable conduct. cannot be permitted to go forward with its charges of inequitable conduct. "[A]rguably inconsistent statements" (Dkt. No. 276 at 35:22-36:9) are not enough.

### b. The Magistrate Judge erred in concluding Honeywell adequately pled specific intent to deceive the Patent Office.

Even at the pleading stage, the Court must determine whether specific intent to deceive the Patent Office is the "single most reasonable inference to be drawn" from the record. *Unverferth Mfg.*, 2014 U.S. Dist. LEXIS 72398, at *10, 15; *see also ESCO*, 158 F. Supp. 3d at 1062-63; *Vaughan*, 2013 U.S. Dist. LEXIS 152068, at *16; *ParkerVision*, 924 F. Supp. 2d at 1318. The Magistrate Judge, in granting Honeywell's motion, erroneously concluded that these

---

[8] Specifically Linh M. Nguyen, James Menefee, and Hetul Patel. (Dkt. No. 252-16.)

cases were distinguishable from the present case and that rule does not apply here. (Dkt. No. 276 at 38:18-39:18.) That those cases may have had different fact patterns, however, does not mean that their recitation of the legal requirements for pleading specific intent to deceive are incorrect.

Rather than hold Honeywell to the burden of pleading allegations from which it could be concluded that specific intent to deceive the Patent Office is the single most reasonable inference, the Magistrate Judge explained only that he could not "rule out that Honeywell could establish, from the evolution of ICM's interpretation of the term 'actuate' and from a few arguably inconsistent statements by ICM agents, that ICM failed to disclose material prior statements to the Patent and Trademark Office with specific intent to deceive that agency." (*Id.* at 36:1-6.) But the law is clear, specific intent to deceive cannot be simply one of multiple potential inferences to be drawn from the record. Rather, it must be ***the single most reasonable*** inference that can be drawn.

Here, even accepting all of the Honeywell allegations that are not directly contradicted by the documents of record on which they purport to rely as true, no reasonable factfinder could conclude that intent to deceive the Patent Office is the single most reasonable inference to be drawn. Both the '719 IPR and the '645 reexam took place after this case started in 2012. ICM knew that Honeywell was watching ICM's actions, both in this Court and before the Patent Office, every step of the way. To argue that, knowing it was being so closely watched, ICM would have intentionally tried to deceive the Patent Office strains credulity. Honeywell has pled no facts from which it can plausibly be inferred that intentional deception is the most reasonable inference to be drawn. To the extent the facts alleged are equally capable of supporting multiple reasonable inferences, Honeywell defense fails as a matter of law.

The Magistrate Judge erred in not holding Honeywell's defense to this standard. And this represents and additional, and independent reason, apart from the lack of any adequately pleaded material misrepresentation or omission, for overturning his ruling allowing Honeywell to assert its proposed inequitable conduct defense.

### 2. Honeywell has not pled a plausible defense of unenforceability based on patent misuse.

To the extent Honeywell's patent misuse allegations rely on the same facts as its inequitable conduct allegations, such allegations must fall together. *Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *44-45. To the extent that the factual allegations supporting Honeywell's claim of patent misuse are distinct, they still fail as a matter of law. When patent misuse claims are based on patent enforcement activities, the accused infringer must plead facts to support a reasonable inference that (1) the enforcement action is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits, and (2) that the litigant's goal is not to win a favorable judgment, but to harass a competitor and deter others from competition by engaging the litigation process itself, regardless of the outcome. *Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at *44; *Glaverbel*, 45 F.3d at 1558.

ICM's claim that Honeywell has infringed the '645 patent has already been subjected to a motion for summary judgment, which it survived. (Dkt. No. 146 at 50.) ICM's theory of infringement has also survived a futility challenge from Honeywell. (*E.g.*, Dkt. No. 183 at 30-31.) The '645 patent, which is presumed valid, has had its validity further confirmed through the Patent Office's reexam. (Doc. No. 252-16.) In view of these prior determinations from the Court and Patent Office, there is no basis to assert that this action is objectively baseless. *Cf. Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875 (Fed. Cir. 2010).

Moreover, it is not possible to read the record to which Honeywell refers in its entirety, instead of Honeywell's misleading and incorrect characterizations of the same, and conclude that ICM's allegations are objectively baseless or that ICM is seeking to leverage the cudgel of litigation rather than obtain a favorable judgment. This is true even drawing all possible inferences, not directly contradicted by the very documents on which Honeywell relies, in favor of Honeywell. Honeywell's patent misuse claim is futile, and the Magistrate Judge erred as a matter of law in concluding otherwise.

## III.    CONCLUSION

For the reasons set forth herein, ICM respectfully requests that the Court sustain ICM's objections to the Magistrate Judge's ruling, deny Defendants' Motion to Supplement in its entirety, and rule that Defendants' First Amended Answer (Dkt. No. 51), without supplementation, is the operative answer in this case.

Dated: August 30, 2019                          MERCHANT & GOULD P.C.

By:   _s/ Rachel Zimmerman Scobie_
      Allen W. Hinderaker, Esq. (*pro hac vice*)
      Rachel Zimmerman Scobie, Esq. (*pro hac vice*)
      Tong Wu, Esq. (*pro hac vice*)
      Paige S. Stradley, Esq. (*pro hac vice*)
      Eric R. Chad, Esq. (*pro hac vice*)
      150 South Fifth Street, Suite 2200
      Minneapolis, MN 55402
      Telephone No.: (612) 332-5300

      HANCOCK ESTABROOK, LLP
      John G. Powers, Esq. (Bar No.:508934)
      1800 AXA Tower I, 100 Madison Street
      Syracuse, New York 13202
      Telephone No.: (315) 565-4500

      ***Attorneys for Plaintiffs International Controls and Measurements Corp. and ICM Controls Corp.***

24

**CERTIFICATE OF SERVICE**

I certify that on August 30, 2019, I caused to be filed a copy of the foregoing document with the Clerk of Court via the CM/ECF system, which gave notice to all counsel who have made an appearance in this case.

By /s/ *Rachel Zimmerman Scobie*
Rachel Zimmerman Scobie