# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

ICM CONTROLS CORP., et al.

                                          Plaintiffs,

    v.                                                       5:12-CV-1766 (LEK/ATB)

HONEYWELL INTERNATIONAL, INC., et al.

                                          Defendants.

_____

RACHEL ZIMMERMAN SCOBIE, ESQ., et al., for Plaintiffs
MATTHEW L. WOODS, ESQ., et al., for Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

# DECISION AND ORDER

On February 7, 2020, plaintiffs (sometimes collectively referred to herein as "ICM") filed a letter motion objecting to defense counsel's recent ex parte communications with ICM former employee Andrew Nguyen, in part because Mr. Nguyen may have disclosed privileged or confidential information that he obtained as a result of his employment. (Dkt. No. 335).[1] Defendants (sometimes referred to as "Honeywell") responded to that motion by letter brief dated February 21, 2020,

---

[1] Plaintiffs previously filed a letter motion for sanctions based on defense counsel's contact with Mr. Nguyen (Dkt. No. 323), which the court addressed court during a telephone conference on January 17, 2020, the transcript for which appears at Dkt. No. 329. The court determined that most of the relief requested by plaintiffs would need to be addressed by the District Judge to whom this case is also assigned, in connection with dispositive motion practice or trial. But, I agreed to address issues relating to what information regarding Mr. Nguyen should be disclosed in discovery and ordered follow-up letter briefing. (Dkt No. 329 at 8-9).

acknowledging that they had retained Mr. Nguyen as a consultant, but denying that defense counsel had elicited any privileged information from him or otherwise breached any applicable legal or ethical standards. (Dkt. No. 339). As a result of direction from the court during a telephone conference on January 17, 2020, both parties made ex parte submissions to the court for my in camera review. (Dkt. No. 329 at 50-51). I advised that parties that, after reviewing those submissions and the letter briefs, I would address the issues of whether Mr. Nguyen's communications with defense counsel reflected the improper disclosure of information obtained from ICM that was privileged or confidential; whether work-product privilege protects any documents regarding defense counsel's communications with Mr. Nguyen; and whether ICM had a substantial need for information regarding Mr. Nguyen's disclosures to defense counsel. (See 1/17/2020 TEXT Minute Entry). This decision is written primarily for the edification of the parties, and assumes familiarity with the background of the issues discussed herein, including the prior conference and related submissions. (Dkt. Nos. 323-325, 329).

## I. GENERALLY APPLICABLE LAW

### A. Attorney-Client Privilege

To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice. *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)

(*citing, inter alia, Fisher v. United States*, 425 U.S. 391, 403 (1976)). "The burden of proving each element of the privilege rests on the party claiming protection." *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 159 (E.D.N.Y. 1994) (*citing, inter alia, In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973)).

It is "well settled" that "in order to receive [attorney-client privilege] protection, a communication must be made 'primarily' for the purpose of seeking legal advice." *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 252 (S.D.N.Y. 2002); *In re Cnty. of Erie*, 473 F.3d 413, 420 & n. 7 (2d Cir. 2007). Communications relating to the prosecution of a patent application are considered to be seeking legal advice or services despite the fact that such communications might contain other information that is tangential to the legal services involved with patent prosecution. *Sanofi-Synthelabo v. Apotex Inc.*, 299 F. Supp. 2d 303, 307 (S.D.N.Y. 2004) (*citing In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805-06 (Fed. Cir. 2000)).

Second Circuit authority has been construed to include within the privilege group individuals who assist attorneys in providing legal services, such as "investigators, [and] interviewers . . . ." *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (citations omitted). Factual investigations conducted by an agent of the attorney, such as "gathering statements from employees, clearly fall within the attorney-client rubric." Id. at 71 (*citing, inter alia, Upjohn Co. v. United States*, 449 U.S. 383, 390-91 (1981)).

### B. Work Product Privilege

In order "to assert privilege under the attorney work product doctrine, [a party] must be able to show that [a] document[ ][was] prepared (1) 'in anticipation of litigation' (2) by a party or its representative and (3) not in the ordinary course of business." *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 WL 4711961, at *8 (W.D.N.Y. September 29, 2011); Fed. R. Civ. P. 26(b)(3); *U.S. v. Construction Products Research, Inc.*, 73 F.3d at 473.

"[W]here one seeks discovery of 'opinion' work-product, i.e., 'work-product that shows mental impressions, conclusions, opinions, or legal theories of an attorney,' . . . . the Second Circuit has held that 'at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.'" *Curto v. Med. World Commc'ns, Inc.*, No. 03-CV-6327, 2007 WL 1452106, at *6 (E.D.N.Y. May 15, 2007) (citations and some internal quotation omitted). "Insofar as factual or non-core work-product is concerned, the privilege is qualified and does not protect everything a lawyer does. . . . Thus, non-core work-product may be subject to disclosure if the requesting party can demonstrate substantial need for the material and undue hardship in obtaining either the material itself or its substantial equivalent." *Alleyne v. New York State Educ. Dept.*, 248 F.R.D. 383, 387 (N.D.N.Y. 2008) (citations omitted); *GUnion Carbidei America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010).

"A lawyer's notes of an interview of a non-party witness is classic work product

4

and may contain both facts and mental impressions of the lawyer." *Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011). As one district court in this Circuit has explained:

> It is clear from the [Second Circuit's] discussion in [*In re*] *John Doe Corp.*[, 675 F.2d 482, 492-93 (2d Cir. 1982)], that in considering whether to require production of attorney interview notes in this circuit, a distinction must be drawn between summaries of the interviewee's statements on one hand and, explicit mental impressions, conclusions, opinions or legal theories of the attorney on the other. To the extent attorney interview notes comprise the former, they are producible upon a showing of substantial need. To the extent such notes are more than just summaries of statements and explicitly contain (as opposed to implicitly reflecting) the opinions, legal theories or mental impressions of the attorney, those portions are entitled to greater protection.

*United States v. Weisman*, No. S1-94-CR-760, 1995 WL 244522, at *10 (S.D.N.Y. Apr. 26, 1995).

## II. FACTUAL BACKGROUND

Andrew Nguyen was the co-inventor on the `645 patent at issue in this case with Andrew Kadah, who is now the President of ICM. Mr. Nguyen left ICM before it applied for the `645 patent in 1997.

Mr. Kadah filed one declaration (Dkt. No. 335-1) and submitted another in camera, stating that he had a regular practice of communicating with patent counsel, Bernhard Molldrem, Esq., for the purpose of obtaining legal advice regarding obtaining patents for various inventions developed by ICM and its employees over the years. (Dkt. No. 335-1, ¶¶ 4-10). Mr. Kadah typically served as the "intermediary" with respect to co-inventors of innovative ICM products, obtaining information from

5

them sought by patent counsel for the purpose of providing legal advice to Mr. Kadah and ICM, and sometimes sharing Mr. Molldrem's advice with the co-inventors. (*Id*. ¶¶ 8-10). Mr. Kadah acknowledged that he had limited recollection of his discussions with patent counsel and Mr. Nguyen about the `645 patent, the application for which was filed more than 20 years ago, and stated that only a few documents relating to such discussions were located in ICM's archived records. (*Id*. ¶¶ 11,13).[2] However, Mr. Kadah did recall having "the types of conversations [as an intermediary] . . . with Mr. Nguyen in connection with obtaining Mr. Molldrem's legal advice concerning the patentability of the invention [covered by the `645 patent], the prior art, and the desired scope of patent protection." (*Id*. ¶ 11). In his ex parte declaration, Mr. Kadah provided a few more specific examples of discussions he had with Mr. Nguyen, which communications, defendants assert, would be protected by attorney-client privilege.

## III. ARGUMENT OF THE PARTIES

Plaintiffs contend that defense counsel's ex parte communications with Mr. Nguyen were inappropriate and likely infringed on privileged communications between Mr. Nguyen and Mr. Kadah, while the latter was serving as an "intermediary" to patent counsel for the purpose of obtaining legal advice regarding the `645 patent. (Dkt. No. 335 at 1-2 & n.1 (*citing, inter alia, Knogo Corp. v. United States*, No. 194-79, 213 U.S.P.Q. (BNA) 936, 939, 1980 WL 39083, at *3, 1980 U.S. Ct. Cl.

---

[2] Attorney Molldrem had no records dating back to 1977 and he did not submit an affidavit in connection with defendants' response to ICM's motion. (*Id*. ¶ 13).

LEXIS 1262, (Ct. Cl. 1980)).[3] ICM acknowledges that defendants could have deposed Mr. Nguyen as a fact witness. However, plaintiffs argue that defense counsel's ex parte contacts with the former ICM employee deprived them of the opportunity to intervene to prevent Mr. Nguyen from inadvertently disclosing privileged communications that he had with Mr. Kadah, without realizing that those communications were intended to be relayed to patent counsel for the purpose of obtaining legal advice. (Dkt. No. 335 at 1-4).

In prior briefing in opposition to plaintiffs' earlier motion for sanctions, defense counsel notes that Mr. Nguyen had not worked for ICM for more than 20 years, and that plaintiffs had never disclosed him as a person with information relevant to plaintiffs' claims, "much less privileged or confidential information." (Dkt. No. 325 at 2-3). Defense counsel contends that his contacts with Mr. Nguyen were consistent with the ethical and legal standards applicable to attorneys in New York, as set forth in *Muriel Siebert v. Intuit*, 8 N.Y.3d 506 (2007). (Dkt. No. 325 at 1-2). That case recognizes that ex parte contact with an opposing party's ex-employee–even those privy to confidential or privileged information–may be appropriate as long as counsel

---

[3] In *Knogo*, the United States Court of Claims, Trial Division rejected the argument that certain documents presenting technical information about an invention, addressed to plaintiff's patent counsel, were not privileged even though they were not written by the client/patentee–the President of Knogo Corp. The documents were authored by individuals in the client's employ or others who were working in close concert with the patentee on the invention. The court found that the claim of privilege was supported by the affidavit of the patentee and statements of plaintiff's counsel, which indicated that the documents "were prepared at the specific request of [the patentee] so that he might give them to his attorney for the purpose of rendering legal services to [the patentee]." 213 U.S.P.Q. at 939, 1980 WL 39083, at *3.

7

operates within certain boundaries and takes measures to avoid disclosure of privileged or confidential information. (*Id.* (*citing, inter alia, Bacote v. Riverbay Corp., Bacote v. Riverbay Corp.*, No. 16 Civ. 1599, 2017 U.S. Dist. LEXIS 35098, at *23 (S.D.N.Y. 2017) ("In New York, ex parte interviews of an adversary's former employee are neither unethical nor legally prohibited.") (*citing Muriel Siebert, supra*). S*ee also* Dkt. No. 339-1 at 1-2).

In an ex parte declaration, defense attorney Matthew Woods describes the measures that he took, in contacting and communicating with Mr. Nguyen in late 2019, to satisfy himself that the former ICM employee was not working with the plaintiffs in connection with the ongoing litigation and was not privy to privileged information. Mr. Nguyen had limited recollection of his communications with Mr. Kadah in 1996 and 1997 relating to the `645 patent and denied having any conversations with patent counsel or the Kadahs[4] about the patent application. Based on those assurances, Mr. Woods contends that he was justified in proceeding with a more detailed interview of Mr. Nguyen regarding ICM's current theories and positions in the pending litigation with respect to the `645 patent and prior art.

## VI. DISCUSSION

### A. Propriety of Defense Counsel's Contacts with Andrew Nguyen

The court concludes that Mr. Wood's ex parte application, as well as prior filed submissions, document that he took reasonable steps to ensure that he did not elicit

---

[4] Andrew Kadah's father and his sister are or were also involved in ICM's business.

privileged information from Mr. Nguyen. The circumstance that Mr. Woods perhaps did not anticipate was Andrew Kadah's purported practice of serving as an intermediary between ICM's patent counsel and any co-inventors of products for which ICM was seeking patent protection. However, Mr. Wood's description of the subject matter of his interview of Mr. Nguyen, as to which Honeywell invokes work-product privilege, does not appear to have elicited potentially privileged information about Mr. Nguyen's communications with Mr. Kadah about the `645 patent, in part because Mr. Nguyen had little, if any, recollection of those discussions more than 20 years after the fact.

Plaintiffs argue that they should be able to monitor defense counsel's questioning of Mr. Nguyen, in the context of a deposition, because of the risk that he might disclose privileged information that he obtained only as a result of communications with Mr. Kadah, while Mr. Kadah was serving as the intermediary to patent counsel. However, as defense counsel argues, and as the *Knogo* case relied upon by plaintiffs recognizes, the attorney-client privilege only protects communications with or relating to counsel, but does not preclude discovery of the underlying facts addressed in those communications through some other means. (Dkt. No. 339-1 at 2-3 (*citing Knogo Corp. v. United States*, 213 U.S.P.Q. at 940, 1980 WL 39083, at *4 ("The privilege only applies to the communication that takes place between the attorney and the client. It does not apply to the technical information itself, so long as that technical information is sought by other discovery techniques

outside of the context of the attorney-client communication.")). Mr. Nguyen and Mr. Kadah have little, if any, recollection of their communications back in 1996 and 1997, and the record does not include any substantive input from patent counsel. Given that, it is highly unlikely that ICM, which bears the burden of supporting a claim of privilege even as to communications made long ago,[5] could establish that the exclusive source of factual or technical information or related opinions provided by Mr. Nguyen would have been privileged communications with Mr. Kadah.

Mr. Kadah's ex parte declaration references a few communications with Mr. Nguyen from 1996 and 1997 that he specifically recalls, including discussion of certain prior art, that were motivated by the need to obtain advice from patent counsel. Plaintiffs contend that these communications remain confidential and privileged and oppose disclosure of the substance to defendants or their attorneys. Mr. Wood's summary of defense counsel's communications with Mr. Nguyen do not suggest that they strayed into the substance of such privileged communications, although that summary does not provide details regarding any conversations about prior art. Given Mr. Nguyen's limited recollection of communications with Andrew Kadah and his statement that he recalled no conversations with the Kadahs regarding the substance of the `645 patent application, the risk that he would inadvertently disclose information

---

[5] *See In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 84 (S.D.N.Y. 2006) (proving "and protecting the privileged status of documents . . . requires, among other things, drafting them in such a way that a court will be able assess the applicability of a privilege claim even when a dispute arises . . . decades after the communication.") (collecting cases), *abrogated on other grounds by In re Queen's Univ. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016).

that he could have only obtained through privileged discussions with Andrew Kadah still seem minimal. However, given the additional information plaintiffs have provided with respect to Mr. Kadah's purported role as an intermediary between Mr. Nguyen and patent counsel, further caution on the part of defense counsel in questioning Mr. Nguyen with respect to communications between Mr. Nguyen and Mr. Kadah would be advisable.[6]

Plaintiffs also contend that defense counsel's ex parte communications with Mr. Nguyen may run afoul of a confidentiality agreement that was typically entered into by ICM employees during Mr. Nguyen's tenure. Defense counsel points out that plaintiffs have not been able to produce a copy of any agreement executed by Mr. Nguyen, and rely on an employee handbook from 1998, after Mr. Nguyen left ICM. Moreover, plaintiffs concede that, as co-inventor, Mr. Nguyen could, as a result of this litigation, be questioned, at least during a deposition, as a fact witness regarding many aspects of the `645 patent. As defense counsel points out, he was permitted to depose Mr. Kadah, without objection, concerning "such subjects as: roles of inventors; conception and reduction to practice; knowledge of the state of the art; the meaning of claim terms; the general operation of the circuit; the benefits of the claimed invention;

---

[6] The court would also suggest that defendants consider whether discontinuing ex parte communications with Mr. Nguyen would be most prudent and might reduce the prospect of further distractions in this litigation. However, given the legal and ethical standards set forth in *Muriel Siebert* and its progeny, I do not believe that I can prohibit such communications, on the current record. However, if defendants continue to use Mr. Nguyen as a consultant, that would entail some risk of straying into arguably privileged information, which could result in sanctions imposed by Judge Kahn. As plaintiffs concede, defendants are free to pursue the alternative of a deposition of Mr. Nguyen, at least as a fact witness.

the request to Mr. Nguyen to sign the patent assignment and the patent declaration; and even the discrepancy between the two titles in the assignment document. (Dkt. No. 339-1 at 3 (*citing* Woods Decl., ¶¶ 3-10)).

Plaintiffs primary argument with respect to confidential information is that defendants should not be permitted to rely upon Mr. Nguyen as an expert, because his status as a former employee would disqualify him. (Dkt. No. 335 at 4 (*citing, inter alia, Pellerin v. Honeywell Int'l Inc.*, No. 11-CV-1278, 2012 U.S. Dist. LEXIS 3781, at *4-5, 2012 WL 112539 (S.D. Cal. 1/12/2012) ("In situations where a party retains an expert witness who previously worked for an adversary and who acquired confidential information during the course of his employment, disqualification may be appropriate.")). Defendants respond that given that Mr. Nguyen has not worked for ICM for more than 20 years, and that ICM cannot document that he was bound by a confidentiality agreement, their use of Mr. Nguyen as a consultant was proper. (Dkt. No. 339-1 at 5 (*citing, inter alia, Rodriguez v. Pataki*, 293 F. Supp.2d 305, 311-13 (S.D.N.Y. 2003) (a conclusory assertion of confidentiality was insufficient to disqualify an expert previously retained by the opposing party)).

Defendants have not yet declared their intention to use Mr. Nguyen as an expert and, in this District, the issue of whether an expert should be allowed to support a dispositive motion or testify is determined by the assigned District Judge. *See, e.g., Rizzo v. Applied Materials, Inc.*, No. 6:15-CV-557 (MAD/ATB), 2017 WL 4005625, at *5-10 (N.D.N.Y. Sept. 11, 2017). Accordingly, to the extent plaintiffs are moving

to disqualify Mr. Nguyen as a defense expert, this court declines to address the issue. As discussed above, the court does not, on the current record, have the basis to preclude defendants' ex parte communications with Mr. Nguyen as a consultant.

### B. Privileges Applicable to the Parties' In Camera Submissions

#### 1. Plaintiffs' Documents and Declarations

The ex parte declaration of Andrew Kadah recites the content of communications that he had with Andrew Nguyen, at the behest of patent counsel, for the purpose of obtaining advice of counsel. It also describes three documents found in the ICM archives reflecting similar communications. The declaration is protected by the attorney-client privilege and was appropriately submitted ex parte for in camera review. It is also protected by the work-product privilege.

The three exhibits attached to Mr. Kadah's ex parte declaration reflect his discussions with patent counsel, and, to a more limited extent, with Mr. Nguyen, regarding the drafting and editing of the application for the `645 patent. These documents are also protected by the attorney-client privilege and were properly submitted in camera.

#### 2. Defendants' Document and Declarations

At the direction of the court, defense counsel produced, for my in camera review, documentation of his communications with Andrew Nguyen, so that the court could assess plaintiffs' claims that counsel improperly elicited privileged and confidential information from the former ICM employee. Defense counsel asserts the

work-product privilege with respect to those documents, as well as counsel's ex parte declaration, which I requested so as to have a more detailed understanding of the substance of his discussions with Mr. Nguyen.

Defense counsel's fairly cryptic notes of his interview(s) with non-party witness, Mr. Nguyen, and counsel's ex parte declaration, which provides more details regarding those communications, are protected by the work-product privilege. The declaration clearly includes the mental impressions and theories and strategy of counsel, and would constitute opinion work product. During the primary interview of Mr. Nguyen, defense counsel asked him to make several drawings and diagrams, which while more factual or technical in nature, would reflect the particular types of information counsel was seeking, so would also constitute opinion work product.[7]

Counsel also communicated via e-mail with Mr. Nguyen on several occasions. These e-mails reflect how initial contact with Mr. Nguyen was made and then addresses mostly logistical arrangements. Before conducting the primary interview of Mr. Nguyen, counsel entered into a consulting agreement with defense counsel. This document does not reflect the substance of counsel's communications with Mr. Nguyen, but reflects the terms of his engagement. Given Mr. Nguyen's status as a

---

[7] To the extent some of the content of these documents may reflect non-opinion work product, plaintiffs have other ways in which they can obtain the underlying factual or technical information, for example by interviewing or deposing Mr. Nguyen. Notwithstanding defendants' consulting arrangement with Mr. Nguyen, defense counsel has indicated that he would not object to plaintiffs communicating with the former ICM employee, subject to their assertion that Mr. Nguyen has agreed not to disclose the substance of his recent communications with defense counsel, as opposed to underlying factual or technical information.

14

former employee of the opposing party in ongoing litigation, the consulting agreements and documents reflecting the circumstances under which the relationship was established may not be protected by work product. *See, e.g., State of N.Y. v. Solvent Chem. Co.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996) ("the consulting agreement, and any related documents that may reveal the facts and circumstances surrounding Mr. Beu's retention as a litigation consultant by ICC, as well as the terms and conditions of his retention, are not protected from disclosure under the work product rule," particularly because "the conduct of ICC, Solvent, and their counsel in relation to Mr. Beu has threatened to undermine the integrity of the adversary process in this case"). While the court has **not** found that defense counsel in this case has violated ethical or legal standards in connection with his communications with Mr. Nguyen, plaintiffs' counsel have grounds for their suspicions. So, even if these documents are covered by work product privilege, they are not opinion work product and I believe that plaintiffs have a substantial need for them in order to make their own assessment of the propriety of counsel's contacts with Mr. Nguyen. Moreover, counsel would not have other means of obtaining this information. So, I will order Exhibits A, D, and E of attorney Wood's ex parte affidavit disclosed to plaintiffs.[8]

**WHEREFORE,** the court finds, based on the current record, including in

---

[8] With access to Mr. Nguyen's consulting agreement, plaintiffs can also be clear on the terms of his agreement with defendants so that plaintiffs' counsel can evaluate the extent to which they should avoid eliciting information from Mr. Nguyen about recent communications with defense counsel.

15

camera submissions, and subject to future findings or rulings of Senior District Judge Kahn, that defense counsel's communications with former ICM employee Andrew Nguyen did not result in the improper disclosure of privileged or confidential information. And, it is

**ORDERED** that, absent a timely appeal of this ruling, defendants shall disclose to plaintiffs, by April 30, 2020, Exhibits A, D, and E to the Confidential, In Camera Declaration of Matthew L. Woods.

Dated: April 10, 2020

*[signature]*

Hon. Andrew T. Baxter
U.S. Magistrate Judge