UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ICM CONTROLS CORP., *et al.*,

                        Plaintiffs,

      -against-                           5:12-CV-1766 (LEK/ATB)

HONEYWELL INTERNATIONAL INC,
*et al.*,

                       Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

This case is a long-running patent dispute between plaintiffs ICM Controls Corp. and International Controls and Measurements Corp. (together, "ICM" or "Plaintiffs"), and defendants Honeywell International, Inc. and Resideo Technologies, Inc. (together, "Honeywell" or "Defendants").[1] ICM currently accuses Honeywell of infringing one patent related to ignition systems for gas furnaces. Dkt. No. 7 ("Amended Complaint"); U.S. Patent No. 5,889,645 (the "'645 Patent").

Presently before the Court is ICM's motion to preclude the opinions offered by Honeywell's damages expert John Bone. Dkt. Nos. 402 ("Motion"); 402-1 (ICM's Memorandum"); 402-5 ("Bone Report"); 409 ("Opposition"); 416 ("Reply"). For the reasons that follow, the Court grants in part and denies in part ICM's Motion.

## II.    BACKGROUND

---

[1] Resideo was added as a defendant in April 2019, after Honeywell spun off Resideo and assigned it aspects of Honeywell's business relevant to this suit. Dkt. Nos. 249, 251. For consistency, the Court continues to refer to Defendants as "Honeywell," as it has in previous opinions.

A detailed account of this case's facts and procedural history can be found in the Court's June 14, 2017 summary judgment decision, Dkt. No. 146 ("June 2017 Memorandum-Decision and Order"), and its December 3, 2019 decision, Dkt. No. 316 ("December 2019 Memorandum-Decision and Order").

## III.    LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, the Court is charged with a "gatekeeping" obligation with respect to expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). The trial judge must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill, with the subject matter of the proffered testimony." United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004). "Generally speaking, expert qualifications are liberally construed." Rondout Valley Cent. Sch. Dist. v. Coneco Corp., 321 F. Supp. 2d 469, 474 (N.D.N.Y. 2004) (citations omitted).

"Under Daubert, factors relevant to determining reliability include the theory's testability, the extent to which it has been subjected to peer review and publication, the extent to which a technique is subject to standards controlling the technique's operation, the known or potential rate of error, and the degree of acceptance within the relevant scientific community."

2

Restivo v. Hessemann, 846 F.3d 547, 575–576 (2d Cir. 2017) (internal quotation marks and citations omitted). The reliability inquiry is a "flexible one," Daubert, 509 U.S. at 594, and the factors to be considered "depend[] upon the particular circumstances of the particular case at issue," Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). "In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." Amorgianos v. Natl. R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002). "Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony. Id. In other words, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). "Frequently, though, 'gaps or inconsistencies in the reasoning leading to [the expert's] opinion . . . go to the weight of the evidence, not to its admissibility.'" Restivo, 846 F.3d at 577 (quoting Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 186 (2d Cir. 2001)).

## IV.    DISCUSSION

For the reasons that follow, the Court excludes the portions of the Bone Report that discuss the "Transformer-Based Alternative" and "Separated Power Supply Alternative" due to Honeywell's failure to properly disclose these alternatives. In addition, the Court excludes the portions of the Bone Report that refer to the Honeywell-Beckett licensing agreement. ICM's Motion is denied in all other respects.

### A.  Disclosure of Acceptable Non-Infringing Alternatives

ICM contends that the Bone Report relies on previously undisclosed information about non-infringing alternatives that should be excluded. The factors identified by the Second Circuit to be considered when granting a motion to preclude expert testimony that was not properly disclosed during fact discovery are (1) the explanation for failure to comply with a discovery order, (2) the importance of the new evidence, (3) the prejudice suffered by the opposing party as a result of having to meet the new evidence, and (4) the possibility of a continuance. <u>Softel Inc. v. Dragon Medical & Scientific Comm., Inc.</u>, 118 F.3d 955, 962 (2d Cir. 1997).

Here, during interrogatories, ICM sought identification of and information regarding all products Honeywell contended were acceptable, non-infringing alternatives to the accused products:

> **Interrogatory No. 13:** Identify all products, if any, that Honeywell contends constitute acceptable, non-infringing substitutes for each of the Accused Products. A complete answer to this Interrogatory must include, for each product identified, a full description of all the facts supporting such contention and must identify all documents supporting, refuting, or otherwise relating to such contention and all persons with knowledge of facts concerning such contention.

> **Interrogatory No. 14:** For each product identified in response to Interrogatory No. 13, explain why Honeywell contends that product is an acceptable, non-infringing substitute for particular Accused Product(s). A complete answer to this Interrogatory must identify (i) the particular Accused Product for which the identified product is an acceptable, non-infringing substitute; (ii) the specific attributes of the product that make it an acceptable, non-infringing substitute for that particular Accused product, (iii) facts sufficient to show Honeywell's ability to source the product, (iv) all documents supporting, refuting, or otherwise relating to such contention, and (v) all persons with knowledge of facts concerning such contention.

Dkt. No. 402-3 at 3, 24. Honeywell responded to both interrogatories and stated that "to the extent that Honeywell will rely on existing or hypothetical noninfringing alternatives as a basis

for a potential design-around argument, Honeywell will supplement its responses and production accordingly." Id. at 4. Honeywell later supplemented its response and identified "Peter Anderson and Luke Piram of Resideo as the persons most knowledgeable regarding acceptable, non-infringing substitutes of the accused products." Id. at 23. In addition, Honeywell stated that:

> Discovery revealed the existence of several non-patented competing designs that were in public use during the relevant period when Honeywell could have redesigned the accused products.

Dkt. No. 409-3 at 62. During depositions, Peter Anderson discussed how a transformer-based alternative was considered in response to questions regarding why Honeywell transitioned from the Series 1 S86 Product to the Series 2 S86 product. See Dkt. No. 409-5 at 103:14–18. Mr. Anderson also discussed why the Series 2 circuit was designed in the manner it was. See id. This "Transformer-Based Alternative" is one of the two alternatives discussed in the Bone Report. See Bone Rpt. ¶ 71. The other alternative is the "Separated Power Supply Alternative." See id. ¶ 73.

ICM argues that Honeywell failed to satisfy its obligation to identify and provide information regarding alleged acceptable non-infringing alternatives in response to ICM's interrogatories seeking that information. See Reply at 5 (citing Sherwin-Williams Co. v. PPG Indus., No. 17-CV-1023, 2020 WL 1283465, at *9 (W.D. Pa. Mar. 18, 2020) (finding that two products could not be considered in the damages analysis where defendant failed to identify and describe those products in response to an interrogatory asking for such information and first identified them in a rebuttal damages report)). ICM adds that Honeywell's identification of persons with knowledge of alternatives is not a substitute for Honeywell's obligation to identify all alleged acceptable non-infringing alternatives. Reply at 7 (citing Pouliot v. Paul Arpin Van Lines, Inc., No. 2-CV-1302, 2004 U.S. Dist. LEXIS 10871, at *6 (D. Conn. June 14, 2004)

5

("Numerous courts have held that a party may not incorporate deposition testimony or otherwise rely on future deposition testimony in lieu of offering a complete and separate response to each interrogatory."). ICM further adds that Mr. Anderson's reference to a transformer-based alternative was made in a different context and could not have given ICM adequate notice of this alleged non-infringing alternative. Reply at 8. Lastly, ICM asserts that it is prejudiced by Honeywell's failure to disclose the alternatives on which Mr. Bone now relies and so his reference to these two alternatives must be excluded. Id. at 8.

Honeywell counters that it mentioned the existence of "several non-patented competing designs" and mentioned that Peter Anderson and Luke Piram had knowledge of these alternatives. Opp'n at 9–10 (citing Dkt. Nos 409-3 at 62, 402-3 at 3). Thus, ICM was on notice about the existence of alternatives and who to contact. Id. Honeywell then points out that Mr. Anderson mentioned the existence of at least one alternative in his deposition and could have mentioned the existence of other alternatives if ICM asked. Id. at 10–11. Lastly, Honeywell argues that Plaintiffs bear the burden of proof of establishing the absence of acceptable non-infringing substitutes and Honeywell is under no obligation to identify non-infringing alternatives. Id. at 7–8 (citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978) (claimant must prove the absence of acceptable non-infringing substitutes in order to demonstrate entitlement to lost profits)).

The Court agrees with ICM. For the burden of proof issue, Honeywell is correct that ICM bears the ultimate burden of establishing it is entitled to lost profits, which includes proving that there were no acceptable non-infringing alternatives. See Panduit Corp., 575 F.2d at 1156. However, it was Honeywell's burden to identify and provide information regarding alleged acceptable non-infringing alternatives in response to ICM's interrogatories seeking that

information. See Sherwin-Williams Co., 2020 WL 1283465, at *9. Plaintiff's burden in proving there were no acceptable non-infringing alternatives partially lies in proving that the alternatives the accused infringer identifies are not acceptable non-infringing alternatives. See id. Furthermore, when the alternatives at issue are hypothetical and never existed on the market, the Court may infer that they were not available as a non-infringing alternative. See LaserDynamics, Inc. v. Quanta Computer, Inc., No. 6-CV-348, 2011 U.S. Dist. LEXIS 5422, at *8–9 (E.D. Tex. Jan. 20, 2011). In such scenarios, the burden shifts to the alleged infringer to demonstrate that the non-infringing alternative would have been available. See id. Accordingly, Honeywell should have responded to ICM's interrogatories and alerted ICM of its proposed non-infringing alternatives.

Honeywell's interrogatory response did not alert ICM of its proposed non-infringing alternatives. It used vague and general language that did not mention a "Transformer-Based Alternative" or a "Separated Power Supply Alternative." In addition, Honeywell's mention of Peter Anderson and Luke Piram having knowledge of alternatives is not a substitute for its obligation to identify alleged acceptable non-infringing alternatives as requested in ICM's interrogatories. See Pouliot, 2004 U.S. Dist. LEXIS 10871, at *6. The Court also agrees with ICM that the deposition testimony from Mr. Anderson about the development of the Series 2 S86 product regarding transformer-based alternatives was in a different context and did not alert ICM about the presence of an alleged non-infringing alternative. See Dkt. No. 409-5 at 102:1–109:25 (deposition testimony of Mr. Anderson discussing the development of the Series 2 S86 product).

Honeywell's failure to disclose these alternatives prejudices ICM. Due to Honeywell's late disclosure, ICM will not have the opportunity to depose fact witnesses about these hypothetical alternatives and will be unable to explore their feasibility, functionality,

acceptability, and potential cost. See, e.g., In re Omeprazole Patent Litig., No. M-21-81, 2002
U.S. Dist. LEXIS 3225, at *3–10 (S.D.N.Y. Feb. 27, 2002) (excluding expert opinion relying on
prior art reference not disclosed during discovery and explaining that plaintiff was harmed
because it did not have the opportunity to take investigatory steps regarding undisclosed
information).

Honeywell requests that if the Court finds that its proposed non-infringing alternatives
were not timely disclosed, the Court should impose a less severe sanction than exclusion and
potentially re-open discovery. However, because this case has been pending for nearly a decade,
and in light of the need to approach a timely resolution, the Court finds exclusion warranted and
fair. For these reasons, the Court grants ICM's Motion to exclude the portions of the Bone
Report that discuss the "Transformer-Based Alternative" and "Separated Power Supply
Alternative."

**B. Law Applied when Assessing Acceptable, Non-Infringing Alternatives**

ICM also asserts that portions in the Bone Report discussing the general acceptability of
alleged non-infringing alternatives is legally incorrect and should be excluded. See ICM's Mem.
at 14–17. These portions of the Bone Report discuss whether the level of universality present in
ignition control products is related to the '645 Patent. See Bone Rpt. ¶¶ 36–38. The distinction
between universal and non-universal products was discussed in the Court's prior Memorandum-
Decision and Order. See Dkt. No. 431 ("July 19, 2021 Memorandum-Decision and Order") at 4–
5.

Honeywell responds that ICM's arguments are directed to the credibility and weight of
Mr. Bone's opinion and these portions of his opinion are best left for cross-examination at trial.
Opp'n at 13–14. The Court agrees. Although ICM summarizes the law of acceptable non-

infringing alternatives, ICM Mem. at 15–16, it fails to point out exactly how Mr. Bone misapplies the law. Furthermore, ICM's criticisms of these portions of Mr. Bone's Report appear to attack his conclusions instead of the reliability of his testimony. See Ulico Cs. Co. v. Clover Capital Mgmt., Inc. 217 F. Supp. 2d 311, 316 (N.D.N.Y. 2002) ("[A]ttacks on the weight and credibility of the opinion . . . are improper criteria for advancing a motion under [Rule] 702.") (internal citations omitted). For this reason, the Court denies ICM's Motion to exclude this portion of Mr. Bone's report.

### C.  Lost Profits on Sales of Non-Universal Products

ICM contends that Mr. Bone misapplies the law in opining that ICM should not be entitled to lost profits based on Honeywell's sales of non-universal products. In the Court's prior decision, it found that ICM did not manufacture a competing non-universal control product and never attempted to enter the non-universal control market. See July 19, 2021 Mem.-Decision and Order at 4–6. The arguments put forth here are largely duplicative of the arguments addressed in the Court's prior decision. See id. Consistent with the July 19, 2021 Memorandum-Decision and Order, the Court finds that Mr. Bone's opinion that ICM should not be entitled to lost profits on Honeywell's sales of non-universal products is not contrary to law. For this reason, the Court denies ICM's Motion to exclude this portion of Mr. Bone's report.

### D.  Reasonable Royalties

ICM seeks to preclude two aspects of Mr. Bone's testimony regarding the determination of a reasonable royalty. First, ICM argues that Mr. Bone's reliance on the license agreement between Honeywell and Beckett Gas, Inc. (the "Honeywell-Beckett Agreement") should be precluded. See ICM's Mem. at 20–23. Second, ICM argues that Mr. Bone's analysis of Georgia-Pacific factor five is incorrect and that Mr. Bone should be precluded from offering opinions that

rely on this analysis. See id. at 23–25 (citing Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970)). For the reasons that follow, the Court excludes the portions of Mr. Bone's testimony that rely on the Honeywell-Beckett Agreement but will allow the remainder of Mr. Bone's reasonable royalty testimony.

      *1.   Honeywell-Beckett Licensing Agreement*

      ICM argues that Mr. Bone's references to the Honeywell-Beckett Agreement should be excluded because this licensing agreement is not comparable to a hypothetical licensing agreement between ICM and Honeywell. The Georgia-Pacific analysis, used to determine a reasonable royalty award for patent infringement, directs an expert proffering a damages opinion to consider, among other things, "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." Georgia-Pacific Corp., 318 F. Supp. at 1120. "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 79 (Fed. Cir. 2012). Even if the technology relates to the same general field of technology, the damages expert must prove a relationship to the patented technology or the accused infringing products. See, e.g., ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 870–71 (Fed. Cir. 2010). When an expert opinion relies on a license agreement that is not sufficiently comparable, that opinion is unreliable under Rule 702 and should be excluded. See, e.g., LaserDynamics, Inc., 694 F.3d at 79–81.

      The Honeywell-Beckett Agreement relates to an arrangement where Beckett Gas, Inc. developed a burner for a water heater and Honeywell developed a corresponding control for the burner. Bone Rpt. ¶¶ 222–26. The agreement between these parties provided Honeywell with certain intellectual property rights to the burner to ensure that Honeywell's control properly

interfaced with Beckett Gas, Inc.'s burner. Id. As ICM points out, this licensing agreement was not between competitors and was not related to the patent technology at issue in this case. See ICM's Mem. at 20–21.

Honeywell agrees with ICM that the Honeywell-Beckett Agreement arose out of a situation that differs from this case. Opp'n at 16. However, Honeywell argues that Mr. Bone did not rely on the Honeywell-Beckett Agreement to support the substance of his reasonable royalty analysis, but instead used this agreement as a "simple check" on his analysis for this case. Id. at 16–17.

ICM retorts that regardless of whether the Honeywell-Beckett Agreement is used to substantively support Mr. Bone's testimony or just as a check on Mr. Bone's testimony, reliance on a noncomparable licensing agreement is improper. Reply at 12 (citing ResQNet.com, Inc., 594 F.3d at 871 (holding that licenses that did not relate to the claimed technology "simply have no place in this case")).

The Court agrees with ICM. As Honeywell admits, the Honeywell-Beckett Agreement is not analogous to a hypothetical agreement that could be reached in this case. Including this agreement in Mr. Bone's testimony may therefore confuse the fact finder. Furthermore, because the Honeywell-Beckett Agreement is only used as a "check" on Mr. Bone's reasonable royalty analysis, excluding this agreement will not substantively alter Mr. Bone's analysis. For these reasons, ICM's Motion with respect to the Honeywell-Beckett Agreement is granted and this portion of the Bone Report is excluded.

   *2. Georgia-Pacific Factor 5*

ICM also argues that Mr. Bone misapplies Georgia-Pacific factor five, and, therefore, his analysis relating to this factor should be excluded. In assessing the amount of a reasonable

11

royalty, <u>Georgia-Pacific</u> factor five instructs the fact finder to consider "[t]he commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor." <u>Georgia-Pacific Corp.</u>, 318 F. Supp. at 1120. <u>Georgia-Pacific</u> factor five is designed to ensure fair compensation for patent owners whose patents are infringed by a direct competitor even where the higher burden of demonstrating lost profits cannot be satisfied. See <u>Mentor Graphics Corporation v. EVE-USA, Inc.</u>, 851 F.3d 1275, 1285 (Fed. Cir. 2017). This is different than the "but for" test used in a lost profits analysis. <u>See</u> <u>id.</u>

ICM argues that Mr. Bone contends that if lost profits cannot be established for certain sales, then the competitive relationship between the licensor and licensee cannot result in an upward impact on the royalty during a hypothetical negotiation. ICM's Mem. at 24. ICM asserts that this testimony is contrary to law. <u>Id.</u> at 25 (citing <u>Minco Inc. v. Combustion Eng'g, Inc.</u>, 95 F.3d 1109 (Fed. Cir. 1996) (awarding a large amount of reasonable royalty payments based on the competitiveness between the patentee and infringer after the patentee failed to prove lost profits for a portion of the infringer's sales)).

Honeywell responds that Mr. Bone makes no such contention and instead explains that while ICM may not be able to obtain lost profits damages, "ICM and Honeywell may generally be seen as competitors in the HVAC industry" in a reasonable royalty analysis. Reply at 18 (citing Bone Rpt. ¶ 233).

The Court agrees with Honeywell and finds that Mr. Bone's testimony is not contrary to the law. In fact, the Court does not find any such contention from Mr. Bone that in the absence of lost profits a competitive relationship cannot result in an upward impact of reasonable royalty damages. The competitiveness inquiry for lost profits damages is different than reasonable

royalty damages and Mr. Bone appears to acknowledge this fact. Whether Mr. Bone's testimony is correct regarding the competitiveness of ICM and Honeywell is best left to a fact finder. For this reason, the Court denies ICM's Motion to exclude this portion of Mr. Bone's testimony.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that ICM's motion to preclude (Dkt. No. 402) is **GRANTED in part and DENIED in part**. The portions of the Bone Report (Dkt. No. 402-5) discussing non-infringing alternatives and the Honeywell-Beckett Agreement are **EXCLUDED**. The rest of the Mr. Bone's testimony may proceed; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      August 04, 2021
            Albany, New York


Lawrence E. Kahn
Senior U.S. District Judge