UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ICM CONTROLS CORP., *et al.*,

                        Plaintiffs,

    -against-                                          5:12-CV-1766 (LEK/ATB)

HONEYWELL INTERNATIONAL INC,
*et al.*,

                        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

This case is a long-running patent dispute between plaintiffs ICM Controls Corp. and International Controls and Measurements Corp. (together, "ICM" or "Plaintiffs"), and defendants Honeywell International, Inc. and Resideo Technologies, Inc. (together, "Honeywell" or "Defendants").[1] ICM currently accuses Honeywell of infringing one patent related to ignition systems for gas furnaces. Dkt. No. 7 ("Amended Complaint"); U.S. Patent No. 5,889,645 (the "'645 Patent").

Presently before the Court is ICM's motion for partial summary judgment. Dkt. Nos. 392 ("ICM's Motion"); 392-1 ("ICM Memorandum"); 411 ("Opposition"); 417 ("ICM's Reply"). For the reasons that follow, the Court grants ICM's Motion in its entirety.

**II.    BACKGROUND**

---

[1] Resideo was added as a defendant in April 2019, after Honeywell spun off Resideo and assigned it aspects of Honeywell's business relevant to this suit. Dkt. Nos. 249, 251. For consistency, the Court continues to refer to Defendants as "Honeywell," as it has in previous opinions.

A detailed account of this case's facts and procedural history can be found in the Court's June 14, 2017 summary judgment decision, Dkt. No. 146 ("June 2017 Memorandum-Decision and Order"), and its December 3, 2019 decision, Dkt. No. 316 ("December 2019 Memorandum-Decision and Order").

## III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Salahuddin v. Gourd, 467 F.3d 263, 272–73 (2d Cir. 2006). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. Salahuddin, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

## IV. DISCUSSION

ICM moves for partial summary judgement on Honeywell's claims, which include invalidity, false marking, lack of standing, and inequitable conduct. The Court finds Honeywell

2

failed to meet its burden on each of these claims. ICM's Motion is therefore granted in its entirety.

**A. Invalidity**

Honeywell originally asserted invalidity claims against the '645 Patent under 35 U.S.C. §§ 101, 102, 103, and 112. Dkt. No. 277 ¶¶ 27–127. Honeywell's claims made under §§ 101 and 112 were dropped in Honeywell's Opposition. Opp'n at 1 n.1. Therefore, the remaining invalidity claims arise from § 102 which involves anticipation, and § 103 which involves obviousness. ICM states that Honeywell fails to demonstrate a single or combination of prior art references teaching all limitations of the '645 Patent claims and seeks summary judgement on Honeywell's invalidity claims. ICM Mem. at 13. In its Opposition, Honeywell argues that: (1) ICM's broad reading of the '645 Patent's claims results in the patent being invalid; and (2) such a broad reading of claims is incorrect because it ensnares prior art. Opp'n at 2.

　　*1. Anticipation and Obviousness Claims*

One way in which a patent claim may be held invalid is through a finding of anticipation or obviousness. A claim is invalid as anticipated if:

> [T]he invention was known or used by others in this country or patented or described in a printed publication . . . before the invention thereof by the applicant for patent, or the invention was patented or described in a printed publication . . . or in public use or on sale . . . more than one year prior to the date of the application for patent.

35 U.S.C. § 102.

A party challenging the validity of a patent may prevail by demonstrating the existence of prior art that "was sufficiently accessible, at least to the public interested in the art, so that such a one by examining the reference could make the claimed invention without further research or experimentation." In re Hall, 781 F.2d 897, 899 (Fed. Cir. 1986). "A prior art reference

anticipates a patent claim if the reference discloses, either expressly or inherently, all of the limitations of the claim." Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1365 (Fed. Cir. 1999).

A patent may also be invalidated "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. "Obviousness is a question of law based on underlying facts." Group One, Ltd. v. Hallmark Cards, Inc., 407 F.3d 1297, 1303 (Fed. Cir. 2005). When a party seeking to invalidate a patent combines multiple prior art references in an attempt to show obviousness, it must show why a person of ordinary skill would have combined those references. See, e.g., Kinetic Concepts, Inc. v. Smith & Nephew, Inc., 688 F.3d 1342, 1366 (Fed. Cir. 2012). The invalidity arguments raised by Honeywell must be analyzed against the backdrop of the independent presumption of validity that 35 U.S.C. § 282 attaches to each claim contained within a regularly issued patent. See Cont'l Can Co., USA, Inc., v. Monsanto Co., 948 F .2d 1264, 1266–67 (Fed. Cir. 1991). In Microsoft Corp. v. i4i Ltd. P'ship, 546 U.S. 91, 100 (2011) the Supreme Court affirmed the standard of proof for patent invalidity, holding that the presumption of patent validity must be overcome by clear and convincing evidence.

The Court finds that Honeywell failed to prove facts that show clearly and convincingly that any single reference or combination of references describes each and every element of any '645 Patent claim. Honeywell argues that its SV9501 Smart Valves product invalidates claims of the '645 Patent. Opp'n at 7. However, in order to support its argument, Honeywell relies on broad term construction in both its Opposition and expert's report. See id. Its interpretation clearly exceeds the proper scope of the '645 claims. For independent claims 1, 7, and 12, for

example, Honeywell's expert Dr. Dickens argues that prior art discloses "a first capacitor having first terminal connected to the first end of said first relay actuator coil," Opp'n at 7, despite there being no direct connection between C1 and D1 in Honeywell's SV9501 product, but instead an intercepting diode (D22) residing between the two electrical components. And this Court has previously determined that the term "connected" should be narrowly construed to only "directly connected with no intervening circuitry." June 2017 Mem.-Decision and Order at 44.

Specifically, for invalidity by anticipation, Honeywell admits through its expert that no prior art literally disclosed or taught every limitation of the '645 Patent by their literal scope. ICM Mem. at14. Instead, its expert downplays the diode as "an insubstantial difference between this pathway and a direct connection." Dkt. No. 393-3 ¶ 177. Nevertheless, "[i]t is a well-established rule of claim construction that claims should be interpreted, if possible, so as to preserve their validity." Evens Med. Ltd. v. Am. Cyanamid Co. 11 F. Supp. 2d 338, 352 (S.D.N.Y. 1998), aff'd, 215 F.3d 1347 (Fed. Cir. 1999). In fact, this Court took invalidity concerns into consideration when it construed the term "connected" narrowly. As the Court previously stated, allowing "connected" to include indirect connections "would dramatically expand the scope of the claims." June 2017 Mem.-Decision and Order at 44. Therefore, Honeywell's invalidity argument fails as to these claims, as well as to claims 3–4, 9–10, 13–14, each of which depends on either claims 1, 7, or 12.

Accordingly, because as a matter of law none of the prior art cited by Honeywell contains each of the limitations contained within the claims of the '645 Patent, these claims are neither anticipated nor obvious. Therefore, ICM is entitled to summary judgment on Honeywell's §§ 102 and 103 invalidity claims.

    2.  *Ensnarement*

Honeywell also argues that a broad reading of the '645 claims cannot be adopted since "such a reading would ensnare prior art[.]" Opp'n at 7. As ICM correctly points out, ensnarement is decided as a matter of law after a jury finds infringement; but even with such a finding, ensnarement "has no bearing on the validity of the actual claims." See ICM Mem. At 13 (citing DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1323 (Fed. Cir. 2009)) (internal quotation marks omitted); see also Carman Indus. v. Wahl, 724 F.2d 932, 937 n.5 (Fed. Cir. 1983) (Even when a properly determined construction "would result in invalidity of the claims, the appropriate legal conclusion is one of non-infringement, not invalidity.") Because ensnarement is not related to invalidity, Honeywell's argument conflating the two is legally incorrect and will not be considered.

### B. Lack of Standing

Honeywell raises a lack of standing argument and contends that ICM is not a valid assignee of the '645 Patent. Opp'n at 12–13. A person or entity that is not the original recipient of a patent is also considered a "patentee" with statutory standing to sue for infringement in its own right if it is the "assignee[]" and current owner of the patent, or an "exclusive licensee[] who w[as] given all substantial rights to the patent." My First Shades v. Baby Blanket Suncare, 914 F. Supp. 2d 339, 345 (E.D.N.Y. 2012). To claim standing to sue, ICM states that it is the assignee of the '645 Patent, with the proper assignment from the original recipient conveying all rights in writing, filed and accepted by the U.S. Patent Trademark Office ("USPTO"). ICM Mem. at 25. However, Honeywell challenges the validity of this assignment, given that another name was used in the assignment document regarding the patent, which is different from the one listed in the title of the '645 Patent. Opp'n at 12–13.

Honeywell's claim for lack of standing and ICM's present Motion concerns two questions: 1) whether the '645 Patent was the intended subject of the assignment between the original inventors and ICM; and 2) if both parties indeed intended for the '645 Patent to be the subject of the assignment, whether clerical errors such as referencing a different name in the assignment agreement would invalidate such an assignment. Regarding the first question, courts traditionally interpret patent assignments "in accordance with [the] statutory and common law of contract[s]." Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA, 619 F.3d 1364, 1367 (Fed. Cir.2010). Since neither party raises an objection,[2] this Court will apply New York law in analyzing whether the '645 Patent was validly assigned to ICM. To determine whether there is genuine dispute over the subject of the assignment, the Court looks at the assignment agreement for ambiguities. Under New York law, "[a]n ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively" and "examined [in] the context of the entire integrated agreement" by "a reasonably intelligent person" who is "cognizant of the customs" and practices in the particular trade or business. Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010) (internal quotation marks omitted). And it is a "question of law for the court to determine" whether there are ambiguities. S. Rd. Assocs., LLC v. Intern. Bus. Machs. Corp., 793 N.Y.S.2d 835, 838 (N.Y. 2005).

Looking at the assignment language within context of the agreement, the Court finds the meaning of the agreement clear. In the first paragraph, the patent being assigned is referred to as "ENERGY PRESERVATION AND TRANSFER MECHANISM," which is identical to the title of the '645 Patent. Dkt. 411-12 ("Assignment") at 1, 5. However, in a subsequent paragraph of

---

[2] In its brief, ICM cites to a case applying New York law to contract claims. ICM Mem. at 26 n.9. Honeywell has not made any objection to the application of New York law for these claims.

7

this document, the assignment is referred to as the "SECOND-ORDER FAIL SAFE FURNACE RELAY CONTROLLER." Id. at 5. Honeywell argues that the assignment is ambiguous and was associated with a different invention identified with the said title, other than the '645 patent,[3] Opp'n at 13, while ICM states that the assignment title is merely a clerical error that occurred during updates when the '645 patent changed its originally planned title, ICM Mem. at 28. To determine the objective meaning of the agreement, the Court will look to the language of the assignment agreement to help determine the true intent of the parties. Here when the patent is first mentioned in the introductory paragraph, with the correct title of the '645 Patent, the clear language indicates it serves to state the scope of the assignment. Or, as asserted by ICM, it serves as contract "recitals" which "may be used to assist in determining the proper construction of a contract." Potter v. Padilla, 38 N.Y.S.3d 372, 372 (N.Y. App. Div. 4th Dep't 2016). The same paragraph further clarifies its goal by identifying the patent as the one which was "executed by [the inventors] ON EVEN DATE HEREWITH."[4] Assignment at 5. As ICM asserts, the '645 Patent was the only application executed by either of its original inventors on the said date.[5] ICM Mem. at 27. When the Patent was later referred to in the middle paragraph of the document, it reads ". . . the whole right, title and interest in and to *said* SECOND-ORDER FAIL SAFE

---

[3] It is unclear whether Honeywell is arguing that the assignment document at issue refers to the assignment of a different patent or the assignment itself is invalid altogether. Since the analysis of the first argument would encompass the second, the Court proceeds under the assumption of first argument.

[4] The assignment agreement is dated March 20, 1997, while on the same day, the inventors executed the application for the '645 Patent.

[5] In its response to ICM's statement of material facts, Honeywell points out another patent, U.S. Patent No. 5,337,206 (the "'206 Patent"), which also lists Mr. Kadah and Mr. Nguyen as inventors. Dkt. 411-1 ¶ 60. But as ICM pointed out, the '206 Patent was filed in 1991, six years before the assignment document was signed. Here, the document at issue states clearly and unambiguously that the assignment was filed contemporaneously with its patent application.

FURNACE RELAY CONTROLLER as fully set forth and described *in the aforesaid application* for patent . . . ." Assignment at 5 (emphasis added). Although a different title was used, it clearly refers back to the patent initially identified, and the only prior discussion of the "application for patent" was the '645 Patent as mentioned in the recital paragraph. Honeywell contends that the assignment was issued for a different invention, but no such invention has been identified, nor did Honeywell offer any evidence pointing to such invention.

Additionally, ICM purports through its patent attorney, Mr. Molldrem's declaration, "SECOND-ORDER FAIL SAFE FURNACE RELAY CONTROLLER" was the original title planned for the '645 Patent, until it was later replaced by its current title. ICM Mem. at 28. (citing Dkt. No. 392-2 ¶¶ 63–66). Honeywell's Opposition, states that ICM relies heavily on Mr. Molldrem's declaration to support its standing, yet Honeywell has not had an opportunity to "test the veracity of Mr. Molldrem's statement" because he has not been deposed. Opp'n at 14. ICM argues in rebuttal that Mr. Molldrem's declaration is merely cumulative. Reply at 11 n.6. It only serves to confirm what has already been proven. There is also other evidence that proves that the "SECOND-ORDER FAIL SAFE FURNACE RELAY CONTROLLER" language aligns with the subject matter of the '645 Patent. For example, the specification of the '645 Patent discusses as "an object of the invention to provide *a second-order fail-safe drive system* . . ." ICM Mem. at 27 (emphasis added). The Court agrees with ICM that Mr. Molldrem's statement is not necessary, and the discrepancy in patent titles in the assignment agreement is merely a clerical error.

Now, the remaining question is whether this clerical error nullifies the patent assignment. Other courts confronting similar question have concluded that it does not. See Smartflash LLC v. Apple, Inc., No. 13-CV-447, 2015 WL 11072177 (E.D. Tex. Feb. 3, 2015), adopted, No. 13-CV-

9

447, 2015 WL 11089751 (E.D. Tex. Feb. 13, 2015) (finding that "Smart-flash Limited' and 'Smartflash Limited' are the same entity," and that the typographical error did not preclude standing); see also Imperium (IP) Holdings v. Apple Inc., No. 11-CV-163, 2012 WL 2995997 (E.D. Tex. June 4, 2012), report and recommendation adopted, No. 11-CV-163, 2012 WL 2995697 (E.D. Tex. July 23, 2012), (finding standing despite the defendant's contentions that "ESS Technology International, Inc." and non-existent "ESS Technologies International, Inc." were distinct entities because an assignment document reflected the name discrepancy and two separate principal places of business) (quoting Southwest Efuel Network, LLC v. Transaction Tracking Techs., Inc., No. 07-CV-311, 2009 WL 4730464, at *4 (E.D. Tex. Dec. 7, 2009)). Similarly, the Court finds that the clerical error here does not nullify ICM's assignment of the '645 Patent.

Accordingly, as a matter of law, the Court finds that ICM's is entitled to summary judgment on Honeywell's lack of standing claim.

### C. False Marking Claim

Honeywell also attempts to use its false marking affirmative defense as a claim against ICM. Honeywell's claim relies on the fact that ICM continued to mark the ICM290A products as practicing the '645 Patent: after the '645 Patent expired on April 17, 2017; and after the ICM290A product no longer practiced the '645 Patent since June 2016. Opp'n at 15.

ICM argues that Honeywell fails to state a triable claim, since it mistakenly raised false marking as a defense for patent infringement, rather than a claim seeking damages. Reply at 12–13. ICM further argues that even if Honeywell had pleaded such a claim correctly, it failed to disclose this basis for its defense in its response to ICM's interrogatories. See id. Instead, Honeywell only raises this argument for the first time in their Opposition. Id.

The Court agrees with ICM's interpretation that false marking is not a defense to infringement. The Second Circuit defines an affirmative defense "as a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003) (internal quotation marks and citation omitted). Instead, false marking is a claim for parties who suffer "competitive injury" from a violation and who seek compensation and recovery of damages:

> A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury.

35 U.S.C.A. § 292(b).

While the language of § 292 outlines a type of injury, cause of action, and associated damages, it does not defeat ICM's infringement claims. Therefore, Honeywell's contention under § 292(b) cannot be raised as an affirmative defense. Additionally, false marking is commonly classified as a counterclaim by other courts.[6] See e.g., Cot'n Wash, Inc. v. Henkel Corp., 56 F. Supp. 3d 613, 619 (D. Del. 2014) ("… and counterclaims to include counterclaims of false marking…."); see also Ecojet, Inc. v. Luraco, Inc., No. 16-CV-0487, 2017 WL 6939158, at *2 (C.D. Cal. Mar. 22, 2017) ("The remaining counterclaim at issue are … false marking…"). However, the Court will consider whether it can construe Honeywell's affirmative defense as a properly raised claim "if justice so requires":

> Mistaken Designation. If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

---

[6] In its Opposition, Honeywell has not referenced any cases where false marking was used as an affirmative defense to infringement claims.

Fed. R. Civ. P. 8(c)(2).

In determining whether to construe an affirmative defense as a properly raised claim, generally, courts consider the stage of litigation and whether there was enough notice to the opposing party. "[A]t least in the early stages of litigation," some courts "generally favor[] defendants" by liberally construing their responsive pleadings "to maximize the defendants' available legal theories." AEL Fin., LLC v. Burns, No. 10-CV-4335, 2010 WL 4313988, at *2 (N.D. Ill. Oct. 19, 2010) (citing Caldera v. Northrop Worldwide Aircraft Servs., 192 F.3d 962, 970 (Fed. Cir. 1999)). However, when the mistake is not merely a technical mis-designation, and the affirmative defense "also fails to provide notice of the basis of the counterclaim . . . the proper course is to decline to convert the defense into a counterclaim." Karum Holdings LLC v. Lowe's Cos., Inc., No. 15-CV-380, 2017 WL 5593319, at *3 (N.D. Ill. Nov. 21, 2017), aff'd, 895 F.3d 944 (7th Cir. 2018); see also Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc., No. 11-CV-1456 2011 WL 6034481, at *9 (S.D.N.Y. Dec. 5, 2011) (declining to convert a set-off[7] affirmative defense into a counterclaim and declining to add a new counterclaim where "the affirmative defense fail[ed] to set forth any facts that resemble in any way the proposed counterclaims" and accordingly "fail[ed] to provide [p]laintiff with any notice of the proposed counterclaims, making Rule 8(c)(2) inapplicable"); Rocheux Int'l of N.J., Inc. v. U.S. Merchs. Fin. Grp, Inc., 741 F. Supp. 2d 651, 660 (D.N.J. 2010) ("The question before the [c]ourt, then, is whether [d]efendants' proposed modification redresses a simple mistaken designation, for which Rule 8(c)(2) provides the appropriate standard for relief, or whether [d]efendants' modification presents a new claim. . . .").

---

[7] See Satterfield v. CFI Sales & Mktg., Inc., No. 9-CV-1827, 2012 WL 640740, *3 (M.D. Fla. Feb. 28, 2012) ("A 'set-off' is a legal term of art which refers to a counterdemand, arising out of a transaction extrinsic to plaintiff's cause of action.) (internal quotations and citations omitted).

The Court will not convert Honeywell's defense into a properly pleaded counterclaim. 35 U.S.C. § 292(b) provides a cause of action for false marking. The affirmative defense in Honeywell's amended answer reads:

> Plaintiffs' claims fail because . . . Plaintiffs . . . have falsely marked products with the '645 Patent . . . . Accordingly, Plaintiffs' claims for damages are barred . . . . In addition, Honeywell may be entitled to appropriate relief.

Dkt. No. 277 ¶¶ 32–33.

The affirmative defense is not a misplaced counterclaim and is insufficient to put ICM on notice. And as ICM correctly points out, Honeywell did not "seek judgement of false marking or any award of damages associated therewith[]" in their "Prayer for Relief." ICM Mem. at 29. Similarly, in other filings, including its response to ICM's interrogatories, Honeywell failed to disclose its basis for its false marking allegation. Id. Honeywell only disclosed the basis for its false marking allegation in its Opposition to ICM's present motion. Dkt. No. 392-28 at 16–18. Given the late stage of litigation this case is currently in, the Court will not construe Honeywell's affirmative defense as a valid claim. Accordingly, as a matter of law, the Court finds that ICM is entitled to summary judgment on Honeywell's false marking "claim."

D. **Unenforceability Claims**

In its Opposition, Honeywell drops its unenforceability claims of equitable estoppel, waiver, and patent misuse. Opp'n at 4 n.1. The only unenforceability claim remaining for the Court's consideration is ICM's alleged inequitable conduct at the reexamination of the '645 Patent.[8] To prevail on a claim of inequitable conduct, "the accused infringer must prove by clear

---

[8] Honeywell also raised laches as its eighth affirmative defense. Dkt. No. 252-1 ¶10. Although not officially dropped by Honeywell in its brief, the Supreme Court has eliminated the defense of laches in the context of patent infringement. See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 137 S. Ct. 954, 967 (2017).

and convincing evidence that the applicant knew of the reference, knew that it was material and made a deliberate decision to withhold it." Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011). ICM argues that given Honeywell's failure to prove any of the elements required for inequitable conduct as a matter of law, summary judgement should be granted.

1. *Material Omission*

Honeywell, through its expert report, suggests ICM omitted and misrepresented its positions on the term "for actuating," which would have been material to USPTO's reexamination of the '645 Patent, during the inter partes review ("IPR") of U.S. Patent No. 6,222,719 (the "'719 Patent") and throughout this litigation. Opp'n at 9. This issue here is two-fold: (1) whether there is a genuine dispute of material fact supporting misrepresentations or omission; (2) if there is such a genuine dispute of material fact, whether it is material to the outcome of the '645 Patent reexamination.

To prove ICM's misrepresentations and omissions, Honeywell points to two instances. First, Honeywell contends that ICM "includes a clear definition of 'for actuating' as 'transferring energy[]'" in its original motion for summary judgement for infringement filed five years ago. Opp'n at 10 (citing Dkt. No. 128-1). Then, Honeywell argues, that "in the reexamination of the '645 Patent, ICM asserted that the transfer energy from Courier's [prior art] coil 34 to capacitor 17A is not 'for actuating.'" Id.

The Court finds Honeywell's interpretation of ICM's position on "to actuate" incorrect. Honeywell improperly takes the above quoted phrases out of context.[9] As ICM clearly states in

---

[9] The memorandum from which both ICM and Honeywell quote reads "'For actuating' means providing energy to power an actuator device; that is, transferring energy—being all that relay coils can do." Dkt. No. 128-1 at 23. As clarified by ICM, "transferring energy" in this context serves as an explanation about how relay coils work, rather than a complete definition of

its original motion for summary judgement for infringement, ICM construes "to actuate" as "providing energy to power." Reply at 6 (citing Dkt. No. 128-1).

Second, Honeywell contends that ICM's discussion regarding the Courier prior art was inconsistent between its reference during the '645 Patent reexamination and ICM expert Dr. Eisenstadt's deposition at the '719 Patent IPR. Opp'n at 9. According to Honeywell, Dr. Eisenstadt admitted during his deposition "that Courier's coil 34 is "for actuating" a second component, the capacitor 17a and the flame sense circuit, through capacitor 40." Opp'n at 10 (citing IPR2014-00219, Ex. 1019 ("Eisenstadt Sept. 17, 2014, Dep. Tr.") at 149:17-150:4). Yet during reexamination of the '645 Patent, not only was this deposition not provided to the USPTO, but ICM also changed its position and argued that "the coil 34 is *not* 'for actuating' a second component[.]" Id. at 11. (emphasis added).

ICM denies that Dr. Eisenstadt made such admission and instead claims that Honeywell attempts to twist Dr. Eisenstadt's meaning by "[putting] words in his mouth to support their position." ICM further challenged its materiality by pointing to USPTO's knowledge of the '719 IPR during the '645 reexamination.

The Court agrees with ICM. Honeywell takes Dr. Eisenstadt's testimony out of context and fails to show a genuine issue of material fact. When viewing the excerpt of Dr. Eisenstadt's deposition, in the light most favorable to Honeywell, one would not conclude that Dr. Eisenstadt provides the admission that Honeywell claims. Specifically, Honeywell's counsel suggested that these components in the Courier circuit were "actuated by the voltage being discharged from Capacitor 40" when they questioned Dr. Eisenstadt. Opp'n at 10–11. (citing Eisenstadt Sept. 17,

---

the term "to acuate." Also, the title of this subsection is "4. 'For actuating' means providing energy to power an actuator device. A first and second relay actuator coil is incapable of controlling another device." Id. at 22. It further spells out ICM's position on "for actuating," which is clearly not merely transferring energy.

15

2014, Dep. Tr. at 149:17-150:4). Dr. Eisenstadt accordingly answered that it would be "to actuate" if powering up is called "actuating" and then immediately rephrased to clarify that "powering up" means "delivering energy to." Id. Since ICM did not, through its expert, admit that certain components within the Courier prior art are for actuating a second component, ICM's position in the '645 reexamination is therefore not inconsistent with the '719 IPR.

Even assuming ICM changed its position regarding the Courier reference, the failure to disclose its prior position would not be material. To be a material change, the information must be "but-for" material to the reexamination. Put differently, it must be the case that "the PTO would not have allowed a patentee's claim had it been aware of the undisclosed [information]." Therasense, Inc.,649 F.3d at 1291. Therefore, a party's failure to disclose would not be deemed as material if the USPTO examiner was aware of the relevant information through other means. See PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC, 193 F. Supp. 3d 133, 146–147 (N.D.N.Y. 2016), aff'd, 714 F. App'x 1022 (Fed. Cir. 2018) (finding that where the USPTO already had the underlying information through other cumulative materials, the patent holder obtained no advantage, and the alleged infringer had no claim of inequitable conduct); see also Helver v. Novo Indus., Inc., No. 97-CV-0701, 1998 U.S. Dist. LEXIS 22228, at *24–25 (S.D. Fla. Nov. 16, 1988) ("because the PTO examiner independently found and examined the relevant prior art, Plaintiff's nondisclosure of prior art was immaterial.")

As indicated in the '645 Patent reexamination form, the examiner took into consideration both Honeywell and ICM's arguments regarding the Courier "for actuating" configuration before coming to a final decision. Dkt. No. 411, Ex. 8 at 6. Therefore, the examiner was aware of Honeywell's argument concerning the Courier reference, even if it was not directly provided by ICM.

Since failure to prove a material omission is fatal to an inequitable conduct claim, the Court finds that ICM is entitled to summary judgment on Honeywell's inequitable conduct claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that ICM's motion for partial summary judgement (Dkt. No. 392) is **GRANTED in its entirety**. Summary Judgment is granted in favor of ICM on Honeywell's claims regarding §§ 102 and 103 invalidity, ensnarement, lack of standing, false marking, equitable estoppel, waiver, and patent misuse; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     August 09, 2021
           Albany, New York

_____
Lawrence E. Kahn
Senior U.S. District Judge